**SOUTHEASTERN COLORADO WATER CONSERVANCY DISTRICT, Objector and Appellant,**

v.

**The CITY OF FLORENCE, a Colorado Statutory City, the Town of Coal Creek, a Colorado Statutory Town, and the Town of Williamsburg, a Colorado Statutory Town, Applicants and Appellees,**

**C.F. & I. Steel Corporation, Union Ditch and Water Company, Lester and Attebery Ditch, Fremont Irrigating Ditch Company, and Robert W. Jesse, Division Engineer, Appellees.**

No. 83SA30.

Supreme Court of Colorado,
En Banc.

Sept. 10, 1984.

Rehearing Denied Oct. 9, 1984.

Howard Holme, Charles J. Beise, Kevin B. Pratt, Fairfield & Woods, Denver, for objector and appellant.

Robert F.T. Krassa, Pueblo, for applicants and appellees.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., William A. Paddock, First Asst. Atty. Gen., Natural Resources Section, Denver, for Robert W. Jesse, Division Engineer.

DUBOFSKY, Justice.

The Southeastern Colorado Water Conservancy District (the objector) appeals a ruling of the district court for Water Division No. 2 (the water court) which decreed to the City of Florence, the Town of Coal Creek and the Town of Williamsburg (the applicants) a conditional right to divert 100 cubic feet per second (c.f.s.) of surface water from the Arkansas River. The objector contends that the water court erred in decreeing the conditional right absent a finding that water can and will be diverted from the already over-appropriated Arkansas River. We agree and reverse the water court's ruling.

The applicants, having concluded that a right to divert 100 c.f.s. of water from the Arkansas River was necessary to serve their anticipated population growth, obtained financing and began construction of facilities designed to divert surface water from the Arkansas. On August 29, 1980, the applicants filed with the water court an application for determination of a conditional water right. The water court referred the application to Water Referee Clyde B. Young, Jr. After the objector filed a timely statement of opposition on October 29, 1980, the referee referred this case back to the water court on November 7, 1980.

At trial, the objector presented expert testimony that a facility capable of diverting 100 c.f.s. of water is unnecessary to fulfill the applicants' needs, that such a facility is beyond the financial resources of the applicants, and that the applicants' current design is capable of diverting only 4.7 c.f.s. of water.[1] The applicants countered that a large decree was necessary because a 1980 right would seldom be in priority[2] and argued that technological and economic changes might make a 100 c.f.s. diversion feasible.

The Arkansas River is severely over-appropriated, and expert witnesses testified that water might be available under the right applied for approximately once every 25 years. The objector attempted to introduce more specific evidence relating to the unavailability of unappropriated water on the Arkansas River and argued that a conditional right could not be decreed in the absence of an augmentation plan adequate to prevent injury to senior appropriators. The water court held that the availability of unappropriated water is irrelevant to the granting of a conditional decree and refused to hear evidence on the issue. The court stated that there would be no injury to senior rights, since the conditional right does not authorize out-of-priority diversions unless those diversions occur under an approved plan for augmentation.

The water court ruled that the applicants had demonstrated intent and taken action sufficient for initiation of the conditional right, stating that whether eventually to construct facilities to accommodate the entire right was a political and economic decision for the applicants, not the water court. The water court held that the availability of water under the right could not be assured and that due to "changing climatic conditions, changes in rainfall, economic conditions, technological improvements, changes in abandonment of water rights, and many other factors," it was not possible to determine whether any water or how much water would be available for the right in the future. In a decree dated November 8, 1982, the water court issued a decree to the applicants for a conditional right with an appropriation date of August

---

1. More specifically, testimony indicated that the applicants' projected needs for the year 2000 could be met with 5 to 10 c.f.s. of water; that the applicants had obtained a $1.6 million Farmers Home Administration loan; that the cost of constructing diversion facilities for 100 c.f.s. capacity would be about $2.5 million; and that the applicants' surface water intake screens and pumping, treatment plant, settling pond and storage capacities all were designed to handle not much more than 4.7 c.f.s. of water.

2. One hundred c.f.s. of water is the equivalent of approximately 200 acre feet of water per day. The applicants suggest that a 1980 decree will be in priority during one or two days of flood conditions every 25 years.

26, 1980. The objector appealed to this court.[3]

### I.

■ The objector contends that the water court erred in determining that the conditional decree would result in no injury to senior appropriators. The argument is without merit. As the water court noted, senior rights are not injured by junior diversions as long as those diversions occur in priority. A "conditional water right" is "a right to perfect a water right with a certain priority upon the completion with reasonable diligence of the appropriation upon which such water right is to be based." Section 37–92–103(6), 15 C.R.S. (1973). A "water right" is "a right to use *in accordance with its priority* a certain portion of the waters of the state by reason of the appropriation of the same." Section 37–92–103(12), 15 C.R.S. (1973) (emphasis added). *See State v. Southwestern Colorado Water Conservation District*, 671 P.2d 1294 (Colo.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1929, 80 L.Ed.2d 474 (1984). The conditional decree at issue does not authorize out-of-priority diversions which would injure senior appropriators.[4] The administration of the applicants' right to avoid such injury is the responsibility of the state engineer and the division engineer. Sections 37–92–501 to –503, 15 C.R.S. (1973 & 1983 Supp.).

### II.

The objector argues that section 37–92–305(9)(b), 15 C.R.S. (1983 Supp.) prohibits issuance of the conditional decree. Under section 37–92–305(9)(b):

> No claim for a conditional water right may be recognized or a decree therefor granted except to the extent that it is established that the waters can be and will be diverted, stored, or otherwise captured, possessed, and controlled and will be beneficially used and that the project can and will be completed with diligence and within a reasonable time.

The objector asserts that this language prohibits the issuance of a decree for a conditional right unless it is found that there is or will be water available for diversion and that the applicants will divert that water.[5] In response, the applicants argue that they should not be burdened with the expense of proving the existence of available water before receiving a conditional decree. Noting that the availability of water depends upon unpredictable factors such as climate, economics and technology, the applicants contend that courts should rely on due diligence requirements to eliminate conditional water rights when appropriation of the water is infeasible.[6] The applicants cite *Colorado River Water Conservation District v. Vidler Tunnel Water Co.*, 197 Colo. 413, 594 P.2d 566 (1979) for the proposition that applicants for conditional decrees need not show the availability of unappropriated water, since water may become available later. *Vidler*, however, was decided before the General Assembly adopted section 37–92–305(9)(b).

---

**3.** This court has direct appellate jurisdiction of water court adjudications. *See* Colo. Const. art. VI, § 2(2); § 13–4–102(1)(d), 6 C.R.S. (1973) and C.A.R. 1(a)(2).

**4.** Out-of-priority diversions may occur when circumstances are such that those diversions do not injure senior rights. § 37–92–102(2)(d), 15 C.R.S. (1973); *Southeastern Water Conservancy District v. Rich*, 625 P.2d 977 (Colo.1981).

**5.** The objector also argues that Colo. Const. art. XVI, §§ 5–6 prohibit the issuance of conditional decrees absent proof of available unappropriated water. Since we resolve this case on statutory grounds we need not reach the objector's constitutional issue.

**6.** Section 37–92–301(4), 15 C.R.S. (1973) requires that:

> In every fourth calendar year after the calendar year in which a determination is made with respect to a conditional right, the owner or user thereof, if he desires to maintain the same, shall obtain a finding by the referee of reasonable diligence in the development of the proposed appropriation, or said conditional water right shall be considered abandoned.

The objector cites no authority for the proposition that applicants must show actual diversion of water in order to obtain a finding of due diligence.

The plain language of section 37–92–305(9)(b) precludes the "wait and see" approach suggested by the applicants. That section requires proof that water will be diverted and that the project will be completed with diligence *before* issuance of a decree for a conditional right.[7] Here, the applicants' assertion that conditions on the river may change, or that there might be meteorological changes which will increase the availability of water, is insufficient to meet the requirements of section 37–92–305(9)(b). Likewise, the water court's statement that it is the applicants' decision whether eventually to expand their facilities to divert the entire 100 c.f.s. of water under the right does not suffice as a finding under section 37–92–305(9)(b) that the water will be diverted. It was therefore error for the district court to issue the applicants a decree for a conditional water right under the circumstances of this case.[8]

We have previously held that a conditional right to divert tributary ground water which would injure senior appropriators may not be decreed except in conjunction with a plan for augmentation assuring enough available water to exercise the right. *Bohn v. Kuiper*, 195 Colo. 17, 575 P.2d 402 (1978). The effect of our recent decision in *Lionelle v. Southeastern Colorado Water Conservancy District*, 676 P.2d 1162 (Colo.1984) (requiring proof of an adequate plan for augmentation before issuance of a conditional storage decree which would injure senior appropriators), is to apply the same standards to the issuance of conditional rights for surface water diversions as for diversions of tributary ground water: where injury to senior appropriators would result, a conditional surface decree should not issue absent a plan for augmentation.

---

7. Under section 13–25–127, 6 C.R.S. (1973), the burden of proof is by a preponderance of the evidence.

8. The water court denied the objector's motion to consolidate this case with *In re Application for Water Rights of the City of Florence, the Town of Coal Creek and the Town of Williamsburg*, 80CW93 (Dist. Court, Water Div. No. 2, August 3, 1982) (approving a plan for augmenta-

We reverse the decision of the water court and remand this case for further proceedings consistent with this opinion. Such proceedings may result in a dismissal of the application or a decree of a conditional right if the record[9] supports findings based on the criteria specified in section 37–92–305(9)(b) and, should the issue be presented by the evidence, the absence of injury to senior appropriators.

---

tion under which out-of-priority diversions may occur under the right at issue here). The augmentation plan approved in that case would not supply enough water to permit full use of the 100 c.f.s. conditional right before this court.

9. The water court, of course, may take additional evidence if necessary to make the required findings.