FWS LAND AND CATTLE
COMPANY, Appellant,

v.

STATE of Colorado, DIVISION OF
WILDLIFE, Humbert Ranches, Inc.,
and Edward W. Blank, Division Engi-
neer for Water Division No. 6, Appel-
lees.

No. 89SA109.

Supreme Court of Colorado,
En Banc.

July 16, 1990.

Rehearing Denied Sept. 4, 1990.

Kevin L. Patrick, P.C., Kevin L. Patrick,
Rhonda J. Bazil, Aspen, for appellant.

Duane Woodard, Atty. Gen., Charles B.
Howe, Chief Deputy Atty. Gen., Richard H.
Forman, Sol. Gen., David F. Steinhoff,
Asst. Atty. Gen., Denver, for appellee
State, Div. of Wildlife.

Peggy M. Ventura, First Asst. Atty.
Gen., Denver, for appellee Edward W.
Blank, Div. Engineer for Water Div. No. 6.

Humbert Ranches, Inc. not appearing.

Justice ERICKSON delivered the Opinion of the Court.

The appellant, FWS Land and Cattle Company, applied for a conditional direct flow right and a conditional storage right in two interconnected lakes that were located on land owned by both FWS and the State of Colorado through the Colorado Division of Wildlife (DOW) and the State Board of Land Commissioners. DOW filed a motion for summary judgment in the water court for Water Division No. 6 which was granted. The water court dismissed FWS's claim for a conditional storage right on the grounds that FWS could not establish that its application met the requirements for the issuance of a conditional decree. On appeal, FWS contends that DOW lacked standing to object to the application, that the water court erred in holding that an applicant must establish its right to use land underlying a reservoir in order to obtain a conditional storage right, and that summary judgment in favor of DOW should not have been granted because of genuine issues of disputed fact. We affirm.

I.

FWS sought a conditional storage right for 1910 acre-feet in the South and East Delaney Lakes, which are located in Jackson County near Walden, Colorado. The lakes together cover a surface area of approximately 217 acres and are connected by a culvert. The only decreed water right to the lakes is owned by FWS and entitles FWS to use the lakes to the extent of five feet above the outlet pipe, amounting to 934.7 acre-feet per year of water, for irrigation purposes. The water right, which was purchased by FWS in 1985, was decreed in 1939 with a 1922 priority date.

FWS owns a small portion of land underlying the south lake and the state owns the remaining land on which the lakes are located.[1] One section is owned by the State Board of Land Commissioners and was acquired by Colorado from the United States upon Colorado's admission into the Union in 1876.[2] DOW has now acquired the remaining land underlying the lakes from the Bureau of Land Management and from private landowners. The lakes and the surrounding lands have been used by DOW as a fishery and for recreational purposes since the 1940's. Because of the lakes' value for fishing and recreation, the two lakes and DOW's surrounding land holdings have been declared a state recreational area known as the "Delaney Butte Lakes State Wildlife Area." In 1971, DOW obtained conservation easements from FWS's predecessor in interest as the owner of the only decreed water right in the lakes.[3]

In its application, FWS presented two claims for conditional water rights. The first claim was for a 20 c.f.s. direct flow right to be diverted from the Roaring Fork River, a tributary of the North Platte River. The water would be delivered to the East and South Delaney Lakes for storage and subsequently used for hydroelectric power generation, fishing, recreation and piscatorial purposes. FWS's second claim was for a conditional storage right in the lakes together with the right to fill and refill the reservoir. The water stored in the lake would be used on FWS's land for hydroelectric power generation, as well as for fishing, recreational and piscatorial purposes. The proposed outlet works for the storage right were to be located solely on FWS's land and would release water from the south lake into a pipeline to be transported to FWS's hydroelectric facility.

FWS moved for partial summary judgment alleging that DOW lacked standing to object to the application and that DOW did not assert injury to a legally cognizable

---

1. The parties stipulated, for the purposes of the summary judgment motion, that the state owns 90% of the underlying land and FWS owns the remaining 10%.

2. FWS leased the section from the State Board of Land Commissioners. The lease provides that any water right sought by the lessee for which the point of diversion or withdrawal is located on the leased premises shall be obtained in the name of and for the state.

3. In 1988, DOW applied for a water right to the lakes claiming an appropriation dating back to the 1940's.

interest. DOW moved for summary judgment as to the claim for the conditional storage right on the grounds that FWS did not have and could not obtain authority to use the state lands underlying the lakes to increase the effective storage capacity of the reservoir. Because FWS could not establish its right to use the state lands for the storage project, the state argued that FWS did not meet the standards for issuance of a conditional water right set forth in section 37–92–305(9)(b), 15 C.R.S. (1989 Supp.).

In granting DOW's motion for summary judgment and dismissing FWS's claim for a storage right without prejudice, the water court held that FWS could not meet the requirements for a conditional storage right at that time. The water court found, based on undisputed facts, that FWS did not have complete ownership of the reservoir bed nor permission to use the state lands for expanded storage purposes. In addition, the water court concluded that the relief requested by FWS exceeded the jurisdiction of the water court and that FWS would have to bring an action in the district court to establish its right to use the state lands.

FWS requested the water court to stay the proceeding and to certify the order granting DOW's motion for summary judgment as a final judgment pursuant to C.R. C.P. 54(b). The water court granted FWS's motion and FWS appealed.

## II.

■ The water court correctly held that DOW had standing to object to FWS's application. The requirements for standing to object to an application for a water right are set forth in section 37–92–302(1)(b), 15 C.R.S. (1989 Supp.) which provides in part:

Any person, including the state engineer, who wishes to oppose the application may file with the water clerk in quadruplicate a verified statement of opposition setting forth facts as to why the application should not be granted or why it should be granted only in part or on certain conditions. Such statement of opposition may be filed on behalf of all owners of water rights who by affixing their signatures to such statement of opposition, in person or by attorney, consent to being included in such statement and who may be detrimentally affected by granting of the application.

The term "person" includes the state. Section 37–92–103(8), 15 C.R.S. (1973).

The Water Right Determination and Administration Act of 1969, sections 37–92–101 to –602, 15 C.R.S. (1973 & 1989 Supp.), establishes liberal standing requirements for those who wish to object to applications for water rights. *See Bunger v. Uncompahgre Valley Water Users Ass'n,* 192 Colo. 159, 165, 557 P.2d 389, 392 (1976). Under the 1969 Act, ownership of a decreed water right is not a necessary requirement for standing. *Id.*

Here, DOW's ownership of the land underlying the lakes as well as DOW's use of the water prior to FWS's application confers standing upon DOW to object to the application.

## III.

■ FWS claims that the water court erred by requiring a showing of land ownership as a prerequisite to obtaining a decree for a conditional water right. Section 37–92–305(9)(b) provides:

No claim for a conditional water right may be recognized or a decree therefor granted except to the extent that it is established that the waters can be and will be diverted, stored or otherwise captured, possessed, and controlled and will be beneficially used and that the project can and will be completed with diligence and within a reasonable time.

A conditional water right is defined as "a right to perfect a water right with a certain priority upon the completion with reasonable diligence of the appropriation upon which such water right is to be based." Section 37–92–103(6), 15 C.R.S. (1973). The purpose of a conditional water decree is to allow an appropriation of water to relate back to the time of the first step in securing that appropriation. *Rocky Mountain Power Co. v. Colorado River Water Con-*

*servation Dist.*, 646 P.2d 383, 387 (Colo. 1982).

Formerly, a conditional decree could be issued on a showing of an intent to appropriate and the performance of overt acts in furtherance of that intent. *See Colorado River Water Conservation Dist. v. Vidler Tunnel Water Co.*, 197 Colo. 413, 416, 594 P.2d 566, 568 (1979). However, following the enactment of section 37–92–305(9)(b), an applicant seeking a conditional decree must prove by a preponderance of the evidence that the appropriation will be completed with diligence before a conditional decree may be issued. Section 37–92–305(9)(b); *Southeastern Colorado Water Conservancy Dist. v. City of Florence*, 688 P.2d 715, 718 & n. 7 (Colo.1984). The statute precludes a "wait and see" approach to the issuance of a conditional decree. *City of Florence*, 688 P.2d at 718. The General Assembly by enacting section 37–92–305(9)(b) intended to reduce speculation associated with conditional decrees and to increase the certainty of the administration of water rights in Colorado.

The broad language of section 37–92–305(9)(b) does not support FWS's argument that ownership of land on which a storage project is to be located is not an issue to be considered in an application for a conditional storage right. FWS must be able to establish that water "can be and will be diverted, stored, or otherwise captured, possessed, and controlled ... and that the project can and will be completed with diligence and within a reasonable time." The ownership of and an applicant's right of access to a reservoir site are appropriate elements to be considered in the determination of whether a storage project will be completed. In granting DOW's motion for summary judgment, the water court properly considered FWS's ability to use the state lands for increased storage purposes.

## IV.

 FWS contends that the water court erred in granting DOW's motion for

summary judgment because a disputed issue of fact exists as to FWS's right to use the state lands for increased reservoir storage. By granting DOW's motion for summary judgment, FWS claims that the water court exceeded its jurisdiction by deciding that FWS had no ownership interest in the use of the state lands. In resolving this appeal, we must consider the jurisdiction of the water court and the nature of a claim for a conditional water right together with the question of whether the case presented a disputed factual issue.

Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *E.g., United States v. Jesse*, 744 P.2d 491, 503 (Colo. 1987). In this case, DOW filed affidavits in support of its motion for summary judgment that stated that FWS did not have permission to use the state lands underlying the reservoir to increase the effective storage capacity of the lakes and would not receive such permission in the future.[4] In response, FWS asserted that the state did not have unencumbered title to the lands underlying the lakes and that FWS had either a prescriptive easement, a license coupled with an interest, or an easement by necessity pursuant to which FWS had the legal right to expand the capacity of its usage of the lakes. In the alternative, FWS argued that it could initiate a water right by trespass and that it could condemn the state lands for use as a reservoir site.

The water court is a legislatively created arm of the district courts located within a particular water division. Section 37–92–203(1), 15 C.R.S. (1989 Supp.). The district courts of the division act through the water judge, who, as provided by the General Assembly, has exclusive jurisdiction over water matters. *Id.* "Water matters shall include only those matters which this article and any other law shall specify to be heard by the water judge of the district courts." *Id.* In addition to exclusive jurisdiction over water matters, the water

---

**4.** DOW conceded, for the purposes of summary judgment, that FWS has a right to use the lakes

to the extent of its decreed right.

judge, as a district court judge, has jurisdiction over other matters implied in article VI, section 9(1) of the Colorado Constitution and section 37–92–203(1) and has the power to decide issues affecting water matters. *Oliver v. District Court*, 190 Colo. 524, 526–27, 549 P.2d 770, 771 (1976); *Perdue v. Fort Lyon Canal Co.*, 184 Colo. 219, 222–23, 519 P.2d 954, 956 (1974).[5] Accordingly, the water judge may exercise jurisdiction over claims and issues that are ancillary to water matters pending in the water court. *Oliver v. District Court*, 190 P.2d at 527, 549 P.2d at 772.

Despite the water court's jurisdiction over issues ancillary to water matters, we conclude that the water court properly refused to adjudicate the relative ownership interests of FWS and DOW in the state lands underlying the lakes as part of this proceeding. The primary function of the water court is to determine water rights. *See* § 37–92–203(1). A water right is defined as "a right to use in accordance with its priority a certain portion of the waters of the state by reason of the appropriation of the same." Section 37–92–103(12), 15 C.R.S. (1973). Determination of a water right thus includes the quantification of the amount and priority of absolute and conditional water rights. Sections 37–92–301(2), –302(1)(a), 15 C.R.S. (1989 Supp.). The is-

suance of a conditional decree is dependent on a showing of intent to appropriate, proof that an overt first step toward completing that appropriation has been made, and pursuant to section 37–92–305(9)(b), a showing that the appropriation can and will be made absolute. *City of Florence*, 688 P.2d at 718.

On the other hand, determination of a right to use lands underlying a reservoir involves real property issues and only tangentially involves water matters. The Water Right Determination and Administration Act does not authorize an adjudication of interests in land as part of a proceeding on an application for a conditional water right.

The water court, since there were no disputed facts, properly granted DOW's motion for summary judgment and dismissed FWS's claim for a storage right in the East and South Delaney Lakes. Accordingly, the judgment of the water court is affirmed.

**5.** In *Oliver,* we upheld the transfer of a case concerning the water level of a reservoir, based on nuisance and breach of a covenant running with the land, from the district court where it was originally filed to the water court for Division No. 1 where a proceeding concerning the same water rights was pending. *Oliver v. District Court,* 190 Colo. at 527, 549 P.2d at 772. *Perdue* held that a water court had jurisdiction to determine the effect of a contract relating to priority of water rights between two parties because the contract affected the priority of water rights. *Perdue v. Fort Lyon Canal Co.,* 184 Colo. at 223, 519 P.2d at 956. *Cf. Humphrey v. Southwestern Dev. Co.,* 734 P.2d 637, 641 (Colo. 1987) (ownership of a water right is not a water matter within the exclusive jurisdiction of the water court and may be determined by the district court).