In the Matter of the Application for Water Rights of Doris L. GIBBS, in the Uncompahgre River, Ouray County, Colorado.

Doris L. GIBBS, Applicant–Appellee,

and

Keith Kepler, Division Engineer, Water Division No. 4, Appellee,

v.

WOLF LAND COMPANY, Protestor–Appellant.

No. 92SA373.

Supreme Court of Colorado,
En Banc.

July 6, 1993.

As Modified on Denial of Rehearing
July 26, 1993.

See also 841 P.2d 1061.

Tisdel & Hockersmith, P.C., Richard P. Tisdel, Ouray, for protestor-appellant.

Brown, Schottelkotte & Tweedell, James D. Brown, Delta, for applicant-appellee.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., and Patrick E. Kowaleksi, First Asst. Atty. Gen., Denver, for appellee.

ERICKSON, Justice.

■ The protestor-appellant, Wolf Land Company (Wolf), appeals from an order of the District Court, Water Division 4 (water court) granting the applicant-appellee, Doris L. Gibbs (Gibbs), a conditional water right for the withdrawal and diversion of 100 gallons per minute of tributary water from a well (the Intex well) located on property owned by Wolf.[1] We conclude that the water court did not err in determining that Gibbs possesses both the ability and intent to use the conditionally decreed amounts of water for a residential community on property that Gibbs is the authorized agent to develop.[2] The water court also properly interpreted the relevant judicial decisions addressing the applicable constitutional and statutory provisions at issue in the present dispute. Accordingly, we affirm the order of the water court.

## I

The Intex well was drilled in 1958 as an exploratory oil and gas test well to a depth of 2,415 feet and now yields water. The well is capable of withdrawing groundwater from at least three separate aquifers that are tributary to the Uncompahgre River. The property on which the Intex well is situated was purchased by Gibbs's husband, Warren Gibbs, in 1976. Subsequently, Warren Gibbs converted the oil and gas well into a water well by constructing a pump house and installing electric power and pumping equipment in the pump house.[3] In 1984, while Warren Gibbs owned the property, he granted what may constitute an easement to Gibbs, which was duly recorded, providing her access to the site of the Intex well. In 1986, the property on which the Intex well is situated was conveyed by a deed in lieu of foreclosure to the Production Credit Association, who in turn conveyed the property to Wolf in 1987.

On November 21, 1991, Gibbs filed a third amended application for conditional water rights.[4] In the application, Gibbs sought conditional water rights in the amount of 100 gallons per minute for purposes of providing water to twenty-four single family homes which were to be built on property situated approximately one and one half miles uphill from the Intex well. In order for water withdrawn by the Intex well to reach the proposed residential development, a pipeline would have to be constructed by way of two possible routes from the Intex well on Wolf's property to the proposed residential subdivision. The

---

1. A conditional water right is defined as "a right to perfect a water right with a certain priority upon the completion with reasonable diligence of the appropriation upon which such water right is to be based." § 37–92–103(6), 15 C.R.S. (1990). The purpose of a conditional water decree is to allow an appropriation of water to relate back to the time of the first step in securing that appropriation. *Rocky Mountain Power Co. v. Colorado River Water Conservation Dist.,* 646 P.2d 383, 387 (Colo.1982).

2. The property on which the homes are to be developed is owned by the Cottonwood and Doubletree trusts. Gibbs is the beneficiary of both trusts, and it is undisputed that she is authorized by the trusts to acquire the conditional water rights and develop the property.

3. The record indicates that subsequent to the construction of the pump house and pumping equipment, water was withdrawn from the well for both domestic and livestock purposes.

4. Gibbs filed her first application in 1984 and filed a second amended application in 1990. The two previous applications were denied because Gibbs failed to provide an adequate plan of augmentation to remedy injury to other vested water rights on the Uncompahgre River.

first route would transport water by way of a pipeline crossing four privately owned parcels of property, including the property owned by Wolf. The alternative route would transport water by way of a pipeline crossing Wolf's property, and then traveling along the public right-of-way of United States Highway 550.

To prevent Gibbs from withdrawing water from a well situated on its property and from transporting the well water by way of a pipeline across its property, Wolf filed a timely statement of opposition to Gibbs's application.[5] On December 23, 1991, a water referee for Water Division 4 entered proposed findings and rulings on the third amended application and recommended that a conditional decree be granted to Gibbs. Wolf filed a protest to the water referee's proposed findings and rulings on January 13, 1992.

On March 30, 1992, Wolf moved for summary judgment in the water court. In its motion for summary judgment, Wolf asserted that the water court did not possess jurisdiction to issue a conditional water right to Gibbs because she had not established, by way of an independent judicial proceeding, that she had legal right of access to the Intex well or the parcels of property that were necessary to withdraw and transport the water to the residential development site. The water court disagreed with Wolf's claim, denied the summary judgment motion, and scheduled the case for trial.

In the course of the trial in the water court, evidence was received which included expert testimony and documents. The water court entered an order on August 11, 1992, granting Gibbs a conditional water right for the diversion of 100 gallons per minute of water for in-house domestic use from the Intex well. The water court found that there was sufficient evidence to support both the availability of the water and that the water was usable for the purposes claimed.[6]

■ The water court rejected Wolf's contention that Gibbs had not satisfied the "can and will requirement" of section 37–92–305(9)(b), 15 C.R.S. (1990).[7] The water court determined that there is no requirement that Gibbs finally establish an unrestricted right of access to the parcels of property that are necessary to withdraw and transport the water from the Intex well to the proposed subdivision. In granting a conditional decree, the water court stated that Wolf "has cited no law to the Court that an Applicant is not entitled to a conditional decree until access is proved." The water court also denied Wolf's contention that *FWS Land & Cattle Company v. State Division of Wildlife*, 795 P.2d 837 (Colo.1990), is controlling on the question of whether an applicant must establish an unrestricted right of access to the necessary real property to perfect the applicant's claim for a conditional water right.

5. Wolf actually filed its statement of opposition to the 1990 application. Because Gibbs's third amended application was an amendment of the second application, Wolf's statement of opposition carried over to the third amended application.

6. The water court's order "finds that [the expert's] testimony was sufficient to support the availability of the water. The Court finds that there was sufficient evidence to support 24 residential units."

7. The commonly referred to "can and will requirement" is derived from section 37–92–305(9)(b) which provides that:

No claim for a conditional water right may be recognized or a decree therefor granted except to the extent that it is established that

the waters *can be and will be* diverted, stored, or otherwise captured, possessed, and controlled and will be beneficially used and that the project *can and will be* completed with diligence and within a reasonable time.
(Emphasis added).

Pursuant to section 37–92–305(9)(b), an applicant must prove by a preponderance of the evidence that the appropriation will be completed with diligence before a conditional decree may be issued. *FWS Land & Cattle Co. v. State Div. of Wildlife*, 795 P.2d 837, 840 (Colo.1990). The General Assembly, by enacting the can and will requirement, intended to reduce speculation associated with claims for conditional decrees and to increase the certainty of the administration of water rights in Colorado. *Id.* The can and will requirement precludes a "wait and see" approach to the issuance of conditional decrees. *Id.*

The water court recognized, however, that the conditional decree sought by Gibbs could not be based on speculative claims of a right to the Intex well water. *See FWS*, 795 P.2d at 840 (stating that the can and will requirement was adopted by the General Assembly in order to restrict the issuance of purely speculative conditional water rights). Therefore, prior to issuing a conditional decree, the water court was required to consider the question of whether Gibbs could legally gain access to the parcels of property that are necessary to withdraw and transport the Intex well water. However, the water court determined that *FWS* does not require Gibbs to finally establish her right of access to the necessary parcels of property prior to obtaining a conditional decree. Because Gibbs may be able to rely on either the previously granted easement or the right of private condemnation pursuant to sections 37–86–102, –104, 15 C.R.S. (1990), the water court determined that she satisfied her burden of establishing by a preponderance of the evidence that she can and will be able to develop the decreed conditional water right.[8]

On appeal, Wolf claims that the water court erred in finding the amount of water conditionally decreed to Gibbs was available and reasonably necessary for the proposed residential development. Wolf also asserts that the trial court misinterpreted *FWS* and therefore erred in finding that Gibbs had satisfied the burden of proof necessary to fulfill the can and will requirement of section 37–92–305(9)(b). We agree with the water court.

## II

Factual findings of the water court that are supported by competent evidence in the record will not be disturbed on appeal even though the appellate court might have reached a different conclusion. *Peterson v. Ground Water Comm'n*, 195 Colo. 508, 516, 579 P.2d 629, 634 (1978). The sufficiency, probative effect and weight of the evidence before the water court, together with the inferences and conclusions to be drawn therefrom, will not be disturbed unless they are so clearly erroneous as to find no support in the record. *Id.* at 516, 579 P.2d at 634–35.

In this case, the water court determined that Gibbs had established that the Intex well was able to withdraw water at the conditionally decreed rate.[9] The water court also found that the conditionally decreed rate was necessary to provide peak demand service to a subdivision consisting of twenty-four individual homes.[10] In our view, the water court's factual findings relating to the flow rate necessary to put the Intex well water to the beneficial use proposed by Gibbs is based on sufficient

8. The power of eminent domain granted by sections 37–86–102, –104, 15 C.R.S. (1990), is authorized by article II, section 14 and article XVI, section 7 of the Colorado Constitution.

Section 37–86–102 was enacted by the first legislative assembly in 1861 and provides that:

Any person owning a water right or *conditional water right* shall be entitled to a right-of-way through the lands which lie between the point of diversion and point of use or proposed use for the purpose of transporting water for beneficial use in accordance with said water right or conditional water right. (Emphasis added.)

Section 37–86–104 provides that:

Upon the refusal of owners of tracts of land through which said right-of-way is proposed to run, to allow passage through their property, the person desiring such right-of-way may proceed to condemn and take same under provisions of articles 1 to 7 of title 38, C.R.S., concerning eminent domain.

9. The testimony of Gibbs's expert was undisputed and went directly to the question of the Intex well's yield.

10. On cross-examination, Gibbs's expert testified that water flow for domestic use at an in-house pressure of forty pounds per square inch would be approximately five gallons per minute. Twenty-four homes could easily demand a flow rate of 100 gallons per minute if all of them required water at the same time. If the water court had accepted Wolf's interpretation of the expert's testimony regarding flow rate, Gibbs would be required to install water-storage facilities at the subdivision end of the water system to service the demands of the subdivision. The record contains no evidence that Gibbs intends to develop the storage facilities that would be required if the Intex well were limited to a flow rate of only five gallons per minute.

competent evidence and those findings will not be disturbed on appeal.

### III

Wolf claims the water court erred in determining that Gibbs satisfied the can and will requirement of section 37–92–305(9)(b). In support of its claim, Wolf asserts that it was error for the water court to rely on the prospective right of private condemnation in this case because *FWS* precludes an applicant for conditional water rights from utilizing the prospective right of private condemnation to satisfy the can and will requirement.[11] We disagree.

*FWS* involved the adjudication of an application for a conditional water right to store water on lands that were owned jointly by the applicant, FWS Land and Cattle Company, and the protestor, the State of Colorado Division of Wildlife (DOW).[12] Before trial, DOW moved for summary judgment claiming that FWS could not satisfy the can and will requirement because "FWS did not have and *could not obtain* authority to use state lands underlying the lakes to increase the effective storage capacity of the reservoir." *FWS*, 795 P.2d at 839 (emphasis added). The water court granted DOW's summary judgment motion, concluding that FWS could not meet the requirements for a conditional water right because it did not have complete ownership of the reservoir bed nor permission to use the state lands for expanded storage purposes. *Id.*

On appeal, we affirmed the water court's entry of summary judgment, holding that "the ownership of and an applicant's right of access to a reservoir site are appropriate elements to be considered in the determination of whether a storage project will be completed. In granting DOW's motion for summary judgment, the water court properly considered FWS's ability to use the state lands for increased storage purposes." *Id.* at 840.

The can and will requirement recognized in *FWS* is not limited as Wolf asserts. Rather, *FWS* is premised on the fact that under *no* circumstances, absent the consent of DOW, could the applicant have obtained access to DOW lands for the purposes of increasing the storage capacity of the lakes.[13] Accordingly, FWS failed to

**11.** The issue of Gibbs's prospective right of private condemnation concerns her ability to obtain access to the parcels of real property that are required for the construction of the pipeline to transport water from the Intex well to the projected residential development. We need not, and do not, address the issue of whether an applicant for a conditional water right may rely on a prospective right of private condemnation to obtain access to the property of another *for purposes of withdrawing underground tributary water* (i.e, the site of the well) because Gibbs is claiming access to the Intex well based on the easement she received in 1984 that was properly recorded.

Although Wolf contests the validity of the easement, that issue has not been resolved, nor is it before us. It is not in dispute that the water court lacked jurisdiction to decide the validity of the easement, and we express no opinion on the issue. For purposes of granting a conditional water right to a well located on land owned by another, a water court may rely on a recorded easement allowing access to the well for purposes of satisfying the can and will requirement unless the easement has previously been found invalid in a separate judicial proceeding. In this case, the granting of a conditional water right to Gibbs does not preclude either Wolf or Gibbs from filing a claim to determine the validity of the easement and the

right of Gibbs to access the Intex well itself. We express no opinion, however, on the ability of Gibbs to appropriate water from the Intex well, or to obtain a final decree for water drawn from the Intex well, if the easement is declared invalid in a subsequent proceeding, in which case Gibbs's utilization of the Intex well may require her to trespass on property owned by Wolf. *Cf. Bubb v. Christensen*, 200 Colo. 21, 26, 610 P.2d 1343, 1346–47 (1980) (stating that while the court need "not reach the question whether trespass is a defense to an application for a conditional water right," *under the "circumstances of this case*, we conclude that trespass is not a defense to the application to make the conditional water right absolute") (emphasis added).

**12.** In *FWS*, the parties had stipulated that the state owned ninety percent of the underlying land and that FWS owned the remaining ten percent. The use proposed by FWS would have resulted in the complete loss of the existing fish population and would have rendered the State Wildlife area valueless for fishing and recreation.

**13.** In *FWS*, it was undisputed that the land on which FWS sought a conditional water right to store water was owned by DOW and not by

meet its burden of establishing that the storage project could and would be completed with diligence and within a reasonable period of time. *See* § 37–92–305(9)(b). In fact, it is evident from the facts of that case that under no circumstances, absent the consent of DOW, could FWS have obtained the necessary land to finalize conditionally decreed water rights.

*FWS* is not dispositive of the issue of whether an applicant for a conditional water right may rely on the prospective right of private condemnation to satisfy the can and will requirement. In contrast to the factual situation presented in *FWS*, it appears that in this case, Gibbs possesses the right to condemn private, or public land for purposes of constructing the necessary pipeline for transportation of water from the Intex well to the projected residential development.[14] The water court properly determined that *FWS* did not control Gibbs's claim for a conditional water right and that Gibbs satisfied her burden under the can and will requirement of section 37–92–305(9)(b).

## IV

We agree with the water court's determination that the conditionally decreed amounts of water are necessary to provide water service to the proposed residential development. An applicant may rely on the potential right of private condemnation in satisfying the can and will requirement unless the record clearly indicates that

there are no circumstances under which the applicant may obtain access to the property necessary to finalize the conditionally decreed right. Accordingly, we affirm the order of the water court.

MULLARKEY, J., specially concurs.

Justice MULLARKEY specially concurring:

I agree with the majority's determination that Doris Gibbs was properly granted a conditional water right in a well located on property owned by Wolf Land Company. I write separately, however, in order to expand on the analysis by which the majority achieves its result.

The majority concludes "that the water court did not err in determining that Gibbs possesses both the ability and intent to use the conditionally decreed amounts of water for a residential community on property that Gibbs is the authorized agent to develop." Maj. op. at 799. In other words, Gibbs was able to meet the "can and will" requirement of section 37–92–305(9)(b), 15 C.R.S. (1990), which is necessary for the granting of a conditional water right. This section provides as follows:

> No claim for a conditional water right may be recognized or a decree therefor granted except to the extent that it is established that the waters can be and will be diverted, stored, or otherwise captured, possessed, and controlled and will be beneficially used and that the project

---

FWS. However, it was also true that FWS *could not have* obtained possession of the necessary lands by condemnation or eminent domain. Therefore, FWS possessed *no* prospective ability to complete the storage project in a reasonable period of time.

**14.** The ability of a person owning a conditional water right to condemn lands owned by others, including public entities, is established in both the Colorado Constitution and statutory water law. *See* Colo. Const. art. XVI, § 7 ("All persons and corporations shall have the right-of-way across public, private and corporate lands for the construction of ditches, canals and flumes for the purpose of conveying water for domestic purposes."); § 37–86–102, 15 C.R.S. (1990) ("Any person owning a ... conditional water right shall be entitled to a right-of-way

through the lands which lie between the point of diversion and point of use or proposed use for the purpose of transporting water for beneficial use.")

Wolf points out that each of the alternative routes from the Intex well to the proposed residential development would require access across public lands. Wolf asserts that Gibbs is required to demonstrate that she has received the right of access to the necessary public land prior to the granting of the conditional decree. We reject Wolf's contention because the water court properly determined that Gibbs would be able to either obtain the necessary consent, or based on the constitutional and statutory provisions involving condemnation, be able to obtain rights-of-way enabling the construction of the pipeline across the public lands.

can and will be completed with diligence and within a reasonable time.

This court has previously found that the "can and will" requirement must be proven by a preponderance of the evidence that the appropriation will be completed with diligence. *FWS Land & Cattle Co. v. State Div. of Wildlife,* 795 P.2d 837, 840 (Colo.1990).

Wolf argues that *FWS* is controlling on the question of whether an applicant must prove a right of access to the subject land before a conditional water right may be granted. In *FWS,* the FWS Land and Cattle Company (FWS) sought a conditional storage right in two lakes. FWS owned 10 percent of the underlying land, and the State Division of Wildlife (DOW) owned the remaining 90 percent. FWS wanted to increase its existing storage capabilities in the two lakes, and the resulting higher water level would have been to the complete detriment of DOW's use of the lakes. The water court dismissed FWS' application without prejudice on the grounds that FWS could not meet the requirements for a conditional water right at that time, and it would have to bring an action in district court to establish its right to use state lands. This court affirmed the dismissal by the water court, stating that the applicant "must be able to establish" the "can and will" requirement through proof of ownership or proof of right of access. *Id.*

Wolf contends that Gibbs cannot rely on the prospective right of private condemnation as proof of access and that, under *FWS,* Gibbs has no proof of access. The majority first states that this argument is not at issue since Gibbs is claiming access to the well through a recorded easement. Maj. op. at 802 n. 11. The majority then goes on to distinguish *FWS,* presumably with regard to Gibbs' recorded easement as proof of access, even though Wolf chose to rely solely on the grounds of private condemnation. It is necessary to note that in the present case, the right to the well itself and the right to cross Wolf's land to access the well are separate rights, while in *FWS* the two were the same—the right of FWS to increase its water storage necessarily

involved the right-of-way over the underlying land.

The majority characterizes *FWS* as being "premised on the fact that under *no* circumstances, absent the consent of DOW, could the applicant have obtained access to DOW lands for the purposes of increasing the storage capacity of the lakes." Maj. op. at 802. The majority also states that "*FWS could not have* obtained possession of the necessary lands by condemnation or eminent domain." Maj. op. at 803 n. 13 (emphasis in original). The opinion in *FWS* itself does not expressly support these contentions and a comparison of the majority opinion in this case with *FWS* may leave the distinction between the two cases unclear or unpersuasive. However, an examination of the constitutional provisions applicable to the situation therein reveals that the majority's statements about *FWS* are accurate.

Article XVI, section 7 of the Colorado Constitution states that:

> All persons and corporations shall have the right-of-way across public, private and corporate lands for the construction of ditches, canals and flumes for the purpose of conveying water for domestic purposes, for the irrigation of agricultural lands, and for mining and manufacturing purposes, and for drainage, upon payment of just compensation.

This section clearly does not apply to storage situations. Such an application cannot be implied either, because the right to condemn must be specifically granted. As we stated in *Potashnik v. Public Serv. Co.,* 126 Colo. 98, 101, 247 P.2d 137, 138–39 (1952):

> The power [of condemnation] lies dormant in the state until the legislature speaks.... Statutes granting ... the powers of eminent domain ... grant no power in addition to that accorded by the specific provisions of the general law covering the subject....

Since FWS was attempting to secure the water rights for storage purposes, article XVI, section 7 did not apply to its situation. Thus, FWS was subject to article II, section 7 of the Colorado Constitution with regard to condemning land for use as a reservoir

to store water. This section restricts any taking to private property only—and FWS was seeking to condemn public property. It is therefore clear that FWS could not have succeeded in bringing any sort of eminent domain or private condemnation claim, and it had no facially valid water right based on these theories.

Furthermore, it must be noted that FWS' easement arguments were likewise invalid and are not comparable to Gibbs' easement. These easements—by necessity and by prescription—must be adjudicated before they are enforceable by the one asserting the easement. Since they had not been adjudicated in that case, FWS had no facial right to water storage.

Essentially, then, the distinction between the situation in *FWS* and this situation is that Gibbs has a facially valid right to the water based on a recorded easement. In contrast, FWS had no such facially valid right. FWS did not have the ability to condemn the land, nor did it have a valid easement at the time of its application for a conditional water right. For that reason, *FWS* cannot be regarded as controlling. Thus, a facially valid easement, although it may be later contested and overturned, constitutes sufficient proof of access to grant a conditional water right.

For these reasons, I concur in the majority's opinion.