In the Matter of the Application
for Water Rights of:

**WEST ELK RANCH, L.L.C.,**
for Appellant,

v.

**UNITED STATES of America,**
for Appellee.

No. 02SA93.

Supreme Court of Colorado,
En Banc.

Dec. 2, 2002.

Phillip Ernest Anselmo, Montrose, Colorado, Attorney for Appellant.

Sandra Slack Glover, U.S. Department of Justice Environment & Natural Resources Division, Washington, D.C., David W. Gehlert, U.S. Department of Justice Environment & Natural Resources Division, Denver, Colorado, Attorneys for Appellee.

Justice KOURLIS delivered the Opinion of the Court.

## I. Introduction

In this case, West Elk Ranch ("West Elk" or "the Ranch") and its predecessors-in-in-

terest sought a conditional water right to a spring located on adjacent National Forest land. The Forest Service denied a Special Use Permit ("SUP") that would have allowed West Elk to capture the water on Forest land and divert it onto West Elk's property. Accordingly, the water court granted summary judgment for the United States, denying the conditional water right because West Elk could not then meet the "can and will" requirement established for the issuance of conditional water rights. *See* § 37–92–305(9)(b), 10 C.R.S. (2002). West Elk now appeals the water court's decision, arguing that it "can and will" eventually obtain an SUP. Because West Elk presented no evidence of a pending proceeding that could result in issuance of an SUP, we affirm the water court's grant of summary judgment.

## II. Facts and Procedural History

West Elk Ranch encompasses approximately 160 acres of land contiguous to National Forest land in Western Colorado. The Ranch comprises several uses including livestock, crops, and a dude ranch operation offering horseback riding, a trading store, and guide and outfitter services into the National Forest.

Upon discovering a spring located on the adjacent National Forest land, the predecessors-in-interest to this action, Larry and Ruth Head, d/b/a/ Head Acres, Inc., filed for a conditional water right to use .01 cfs of the Bear Gulch Spring for stock and wildlife water, and for domestic use for up to four housing units and up to twenty campsites. Head Acres proposed to construct a spring box or collection facility on the Forest land and then divert the water through a piping system to the property now known as West Elk Ranch. Head Acres acknowledged that the application would require an SUP from the Forest Service prior to the construction of the diversion system, as the spring and the pipeline would lie on National Forest land. The United States Department of Justice ("DOJ") filed a statement of opposition to Head Acres' petition, stating that because

Head Acres had not obtained an SUP, it could not legally divert the water off federally owned property. DOJ further expressed concern over the project's environmental effects.

Some fifteen months later, Head Acres filed an application for an SUP with the Forest Service. The property was then sold to West Ridge Group, LLC, d/b/a West Elk Ranch, LLC.[1] The Forest Service denied the SUP application because of concerns over the environmental impacts of the proposed construction of the collection facilities and pipeline. The Forest Service further noted that it believed the applicant had no need for the water, and could meet its water needs with water from fee land. The denial letter stated that the applicant could submit additional information and ask for reconsideration if it truly had no alternatives on fee land. West Elk did provide the Forest Service with additional information to consider, but the Forest Service persisted in the denial. West Elk then challenged the denial and a Forest Supervisor reviewed the proposal. The supervisor stated that he agreed with the denial, as the proposed project would unreasonably conflict with National Forest uses for the spring.

Based on these various denials, the water referee issued a proposed order denying the conditional water right, since West Elk could not put the water to beneficial use without the SUP. The United States then filed for summary judgment pursuant to C.R.C.P. 56(h) with the Water Court for Water Division No. 4. The court granted summary judgment in favor of the United States, thereby denying West Elk the conditional water right to the spring. In a written opinion, the court found that the denial of the SUP defeated West Elk's obligation to show that it "can and will" put the water to beneficial use.

West Elk subsequently brought this appeal for review of the conditional water right denial.

---

1. West Elk filed appropriate paperwork in order to substitute parties for the conditional water right application in water court, but never submitted an SUP application under its name or asked for a substitution of parties on the SUP application.

## III. Standard of Review

 While the standard of review of a court's grant of summary judgment is well-established, we set it forth here in order to frame the question we must address. Summary judgment is appropriate when the pleadings and supporting documentation demonstrate that no genuine issue of material fact exists and that the moving party is entitled to summary judgment as a matter of law. *Martini v. Smith,* 42 P.3d 629, 632 (Colo.2002); *Vail/Arrowhead, Inc. v. Dist. Ct.,* 954 P.2d 608, 611 (Colo.1998). The appellate court reviews the grant of a summary judgment motion *de novo,* as it is ultimately a question of law. *Martini,* 42 P.3d at 632; *Feiger, Collison & Killmer v. Jones,* 926 P.2d 1244, 1250 (Colo.1996) (" 'All summary judgments are rulings of law in the sense that they may not rest on the resolution of disputed facts. We recognize this by our *de novo* standard of reviewing summary judgments.' ")(quoting *Black v. J.I. Case Co.,* 22 F.3d 568, 571 n. 5 (5th Cir.), *cert. denied,* 513 U.S. 1017, 115 S.Ct. 579, 130 L.Ed.2d 494 (1994)). The nonmoving party is entitled to the benefit of all favorable inferences from the undisputed facts, and all doubts as to the existence of a triable issue of fact must be resolved against the moving party. *Martini,* 42 P.3d at 632.

## IV. Analysis

 The statutes define a conditional water right as "a right to perfect a water right with a certain priority upon the completion with reasonable diligence of the appropriation upon which such water right is to be based." § 37–92–103(6), 10 C.R.S. (2002). Such decrees "are designed to establish that the 'first step' toward the appropriation of a certain amount of water has been taken and to recognize the relation back of the ultimate appropriation to the date of that first step." *City of Aspen v. Colo. River Water Conservation Dist.,* 696 P.2d 758, 761 (Colo.1985). While the conditional decree system encourages investment in more expensive or time-consuming water projects by reserving prior-

ity dates for the appropriation of the water, the conditional rights are subject to scrutiny to prevent abuse and speculation. *Dallas Creek Water Co. v. Huey,* 933 P.2d 27, 35 (Colo.1997).

Indeed, the General Assembly eliminated a "wait and see" approach to determining conditional water rights. Instead, it opted to require an applicant to show in the conditional decree proceedings that it "can and will" complete the appropriation of water with diligence and within a reasonable time before a court may issue a conditional decree. *FWS Land & Cattle Co. v. State Div. of Wildlife,* 795 P.2d 837, 840 (Colo.1990). Section 37–92–305(9)(b) provides:

> No claim for a conditional water right may be recognized or a decree therefor granted except to the extent that it is established that the waters *can be and will be* diverted, stored, or otherwise captured, possessed, and controlled and will be beneficially used and that the project *can and will* be completed with diligence and within a reasonable time.

(emphasis added).

This court has interpreted that language on a number of occasions. In *FWS,* the Division of Wildlife and FWS owned adjacent parcels of land underlying two lakes.[2] FWS sought a conditional direct flow right and a conditional storage right for the two lakes. The Division of Wildlife moved for summary judgment on the conditional storage right, claiming that FWS did not have and could not get the authority to increase the storage capacity of the lakes on state lands. *FWS,* 795 P.2d at 839. Because FWS was unable to gain the needed authorization due to its inability to condemn state lands, the state argued that FWS could not meet the standards set forth in section 37–92–305(9)(b).

We concluded that the ownership of the underlying lands and the right to use those lands for storage purposes were appropriate considerations for the water court in determining whether to grant a conditional right. *Id.* at 840. This court explained that the

---

**2.** The parties had stipulated that the state owned 90% of the underlying land and FWS owned the remaining 10%.

enactment of section 37–92–305(9)(b) requires an applicant to prove by a preponderance of the evidence that it will complete the appropriation with diligence and within a reasonable period of time. *Id.; see also City of Thornton v. Bijou Irrigation Co.* 926 P.2d 1, 42–43 (Colo.1996)(construing the 'can and will' statute as requiring a conditional water rights applicant to establish that there is a substantial probability that within a reasonable time the facilities necessary to effect the appropriation can and will be completed with diligence, and that as a result waters will be applied to a beneficial use). Because FWS could not obtain consent from the Division of Wildlife or condemn access, it could not put the water to beneficial use and therefore it had no ability to complete the project within a reasonable time.

West Elk argues that the case at hand is more akin to the facts presented in *In re Gibbs,* 856 P.2d 798 (Colo.1993). In *Gibbs,* the applicant sought a conditional water right for the withdrawal and diversion of water from a well located on another owner's land. The water court granted the right, over the landowner's opposition. The landowner appealed. This court held that while the water court was required to consider whether Gibbs could legally gain access to the property necessary to capture and divert the decreed water, Gibbs did not have to finally establish her right of access to the property prior to obtaining a conditional decree. *Id.* at 801. Unlike in *FWS* where the applicant made no showing of an ability to obtain the necessary permission, here the water court found that Gibbs had demonstrated that she could gain access to the property by means of a previously granted easement or private condemnation. *Id.* Hence, the water court

found that Gibbs had met the burden of establishing by a preponderance of the evidence that she could and would be able to develop the conditionally granted water right, and this court agreed. *Id.*

■ Here, we have to determine if West Elk has made the requisite showing that it "can and will" develop the water pursuant to its plan. Because the Forest Service's denial of the SUP eliminates the only alternative available to West Elk, this case is more similar to *FWS* than to *In re Gibbs*.

West Elk argues that it still may obtain a permit; however, there is no evidence in the file indicating a pending appeal or other proceeding that will potentially result in the issuance of an SUP to West Elk.[3]

The Federal Land Policy and Management Act of 1976, and the regulations that implement the Act, grant the Forest Service the authority to issue Special Use Permits for National Forest land. 43 U.S.C. § 1761(a)(1) (2002), 36 C.F.R. § 251.53(*l*)(1). Applicants must seek a permit from the Forest Ranger or Supervisor with jurisdiction over the affected area, but the application itself does not convey any use rights. 36 C.F.R. § 251.54(b),(c). Upon receipt of the application, the Forest Service does an initial screening for minimum requirements. 36 C.F.R § 251.54(e)(1). If the applicant cannot meet the minimum standards, the Forest Service will deny the application without further consideration. *Id.* Here, the Forest Service District Ranger denied West Elk's SUP application because it failed to meet a minimum requirement that the SUP cannot conflict or interfere with National Forest uses. *Id.* Upon review, the Supervisor agreed.

---

3. The appeals process for the denial of Special Use Permits is clearly delineated at 36 C.F.R. part 251, subpart C (2002). An applicant has two levels of appeal to contest a decision made by a District Forest Ranger. 36 C.F.R. § 251.87(c). First, West Elk could appeal the District Ranger's decision to the Forest Supervisor. *Id.* West Elk did indeed seek review from the Forest Supervisor, who agreed with the District Ranger's denial of the SUP application and issued a written letter to that effect on December 18, 2001. Second, West Elk could appeal the decision to the Regional Forester within 15 days of the decision from the Supervisor. *Id.* West Elk

presented no evidence that it sought this second level of review. West Elk did attach as an appendix to the "Notice of Appeal of Water Right Denial," a "Notice of Administrative Appeal of Special Use Permit Denial," dated January 24, 2002, addressed to the appeals office of the United States Forest Service. Since the Supervisor issued the first level appeal decision on December 18, 2001, West Elk apparently missed the 15–day deadline. Because we have nothing in the record to indicate that such appeal is pending, we presume the Forest Supervisor's decision to be final.

Without an SUP, West Elk cannot put the water to beneficial use. West Elk presented insufficient evidence to the water court to demonstrate a substantial probability that it will eventually obtain an SUP. Accordingly, the water court properly granted summary judgment against West Elk.

## V. Conclusion

We conclude that, for the purposes of the water court decision, there was no material question of disputed fact—the Forest Service denied West Elk the SUP that would make the appropriation of the water possible, and West Elk presented no evidence that the decision might be overturned. Based on this denial, West Elk could not meet the "can and will" requirement found in section 37–92–305(9)(b). We, therefore, affirm the water court's denial of West Elk's application for a conditional water right.