Concerning the Application for Water Rights of the City of Aurora, Colorado, acting by and through its utility enterprise in Adams, Arapahoe, Douglas and Weld Counties.

The CITY OF AURORA, acting by and through its utility enterprise, Applicant–Appellant

v.

ACJ PARTNERSHIP; Apex Material Specialists LLC; Bijou Irrigation Company; Bijou Irrigation District; Brighton Ditch Company; Centennial Water and Sanitation District; City of Brighton; City of Thornton; City and County of

Denver; East Cherry Creek Valley Water and Sanitation District; Eastern Hills LLC; Eastside Auto Investment Co., LLLP; Farmers Reservoir and Irrigation Company; Henrylyn Irrigation District; New Brantner Extension Ditch Company; Northern Colorado Water Conservancy District; Public Service Company of Colorado; Rangeview Metropolitan District; South Adams County Water and Sanitation; State Board of Land Commissioners; and Stephen Tebo, Opposers–Appellees

and

Division Engineer for Water Division 1, Appellee Pursuant to C.A.R. 1(e).

No. 08SA222.

Supreme Court of Colorado,
En Banc.

June 1, 2009.

Brownstein Hyatt Farber Schreck, LLP, Steven O. Sims, Adam T. DeVoe, John A.

Helfrich, Denver, Colorado, Attorneys for Applicant–Appellant.

Petrock & Fendel, P.C., Frederick A. Fendel, III, Matthew S. Poznanovic, Denver, Colorado, Attorneys for Opposer–Appellee Rangeview Metropolitan District.

No Appearance by or on behalf of ACJ Partnership; Apex Material Specialists LLC; Bijou Irrigation Company; Bijou Irrigation District; Brighton Ditch Company; Centennial Water and Sanitation District; City of Brighton; City of Thornton; City and County of Denver; East Cherry Creek Valley Water and Sanitation District; Eastern Hills LLC; Eastside Auto Investment Co., LLLP; Farmers Reservoir and Irrigation Company; Henrylyn Irrigation District; New Brantner Extension Ditch Company; Northern Colorado Water Conservancy District; Public Service Company of Colorado; South Adams County Water and Sanitation; State Board of Land Commissioners; Stephen Tebo; and Division Engineer for Water Division 1.

Justice BENDER delivered the Opinion of the Court.

### Introduction

This appeal concerns a water court application in which the Appellant, the City of Aurora ("Aurora"), sought conditional water storage rights. Aurora appeals from the water court's order granting partial summary judgment in favor of Opposer–Appellee Rangeview Metropolitan District ("Rangeview"), and dismissing that part of Aurora's application claiming conditional water storage rights in three disputed sites. These three sites significantly overlap reservoir sites which Rangeview currently leases from the state. Under a lease agreement, the Colorado State Board of Land Commissioners ("Land Board"), which administers the land on which the disputed sites are situated on behalf of the state, is required to convey rights-of-way to Rangeview for construction of its reservoirs when such construction is imminent. The water court ruled that, as a result of its contractual obligations to Rangeview, the Land Board was precluded from granting Aurora any access to the disputed sites. Thus, the water court concluded that, as concerns the disputed sites, Aurora could not satisfy the statutory "can and will" requirement for a decree of conditional water rights. The "can and will" requirement mandates that in order to establish a conditional water right, an applicant must show that the waters can and will be diverted and beneficially used, and that the project can and will be completed with diligence and within a reasonable time. § 37–92–305(9)(b), C.R.S. (2008). We affirm.

We hold that Aurora failed to demonstrate by a preponderance of the evidence that there is a substantial probability that it can and will gain access to the disputed sites. Because Aurora failed to advance any genuine issue of material fact concerning its present or prospective ability to access the disputed sites, we conclude that the water court appropriately dismissed Aurora's claims for conditional water storage rights in those sites on partial summary judgment. We remand the case to the water court for proceedings consistent with this opinion.

### Facts and Proceedings Below

The city of Aurora filed an application for conditional water rights requesting, among other things, conditional water storage rights. Aurora plans to divert water from the South Platte River at two points of diversion near Brighton, Colorado, and plans to store a portion of the diverted water in its proposed "East Reservoir." Aurora has not yet determined where the proposed East Reservoir will be located and therefore sought conditional water storage rights for six alternative reservoir sites. Three of Aurora's claimed sites are located on the former Lowry Bombing Range ("Lowry Range"), now owned by the State of Colorado and administered by the Land Board.

Approximately seven years before Aurora filed its application, the Land Board and Rangeview entered into a restated lease agreement concerning water rights and land uses on the Lowry Range. The lease term runs for 99 years, from May 1, 1982 until May 1, 2081. The lease identifies four sites on the Lowry Range that Rangeview will be allowed to use for its own future reservoirs. These reservoir sites have been decreed as conditional water storage rights. The lease

obligates the Land Board to convey non-exclusive rights-of-way to Rangeview for its decreed reservoir sites. The lease also obligates Rangeview to provide water service to future development on the Lowry Range and permits Rangeview to use a portion of the water to serve others located off the Lowry Range. The water court determined, and Aurora concedes, that the three proposed Aurora reservoir sites located on the Lowry Range "significantly overlap" three of Rangeview's sites.

After considering Aurora's request for access to the disputed sites, the Land Board issued an order denying Aurora's request. The order stated that, because allowing Aurora to build its proposed reservoirs would "require Rangeview to give up one or more of its decreed reservoir sites," and because of its contractual obligations to Rangeview, the Land Board could not grant Aurora access unless and until Aurora obtained Rangeview's consent.

Rangeview moved for partial summary judgment in the water court, asking the court to deny Aurora's claimed conditional water storage rights for the disputed sites. In its motion, Rangeview argued that partial summary judgment was appropriate because Aurora cannot prove that it "can and will" complete its claimed appropriation for any of the three disputed sites. The water court agreed.

The water court ruled that, as a result of its contractual obligations to Rangeview, the Land Board was precluded from granting Aurora any access to the disputed sites. The water court began by interpreting Rangeview's lease and determined that the lease gave the Land Board no meaningful discretion to refuse to grant Rangeview the rights-of-way described in the agreement. Aurora contended that the lease did not preclude the Land Board from granting Aurora access to the disputed sites for two reasons: (1) the rights-of-way granted Rangeview are nonexclusive and therefore Aurora could share a right-of-way with Rangeview; and (2) the lease grants the Land Board the authority to relocate Rangeview's rights-of-way. The water court addressed and rejected both arguments.

As to Aurora's argument that its rights-of-way could be co-located with Rangeview's, the water court noted that the owner of land burdened by a right-of-way may not make use of the land so as to interfere unreasonably with the right-of-way. Thus, the court reasoned that even though Rangeview's rights are nonexclusive, the Land Board would still not be permitted to grant a third party a right-of-way in the land burdened by Rangeview's rights-of-way that would unreasonably interfere with Rangeview's rights. The water court ruled that it was unreasonable to assert that the grant of a right-of-way for a reservoir over an existing right-of-way for a reservoir would not unreasonably interfere with Rangeview's rights, especially in view of the fact that an owner of water storage right has the right to control the water in storage.

As to Aurora's argument concerning relocation of Rangeview's rights-of-way, the court examined the language of the relocation provision in the lease. The court found that the lease granted the Land Board the right to relocate the rights-of-way only for the convenience of the parties to the lease, and would not allow the Land Board to relocate them for the benefit of a third party. Moreover, the lease provided that any relocation must be for "the commercially reasonable development of the Lowry Range," which would not include Aurora's water project. Finally, the court noted that the lease only allows amendment to the master plan of rights-of-way so long as it does not "materially adversely affect the rights and privileges of any Party." The court ruled that moving Rangeview's right-of-way for a reservoir site, even if somehow for the commercial development of the Lowry Range, "would almost certainly materially adversely affect Rangeview's rights." And even if the Land Board could relocate the planned rights-of-way, the court concluded that "it cannot be reasonably asserted that an existing dam and reservoir would be relocated." The court supported its interpretation of the lease by noting that it is the same interpretation endorsed by both parties to the lease, Rangeview and the Land Board, as evidenced by the Land Board's order, and that Colorado courts de-

fer to the interpretation placed on the contract by the parties themselves.

Because the lease precluded the Land Board from granting Aurora access to the disputed reservoir sites, the water court determined that "Aurora is, in essence, speculating that Rangeview will fail to exercise its rights [to demand the rights-of-way] or that the Lease Agreement itself will fail in the future." The water court observed that Aurora must "wait and see if any of the disputed sites are not used," and concluded, based on this court's precedent, that because the can and will statute eliminates a "wait and see" approach to the issuance of a conditional decree, Aurora could not satisfy the statute.

Aurora filed a motion for reconsideration on the grounds that there had been no "final denial" of Aurora's access to the disputed sites and that there were disputed issues of material fact concerning Aurora's prospective ability to access the property that should not have been resolved on summary judgment. In support of its motion for reconsideration, Aurora submitted several affidavits.

The water court denied Aurora's motion for reconsideration. The court first ruled that it need not consider Aurora's additional affidavits because they raised new factual issues not addressed by the parties in their litigation of Rangeview's motion for partial summary judgment. In spite of this ruling, the court went on to consider Aurora's affidavits and concluded that the new evidence would not alter its conclusions in any event.

Aurora appeals both the water court's order granting Rangeview's motion for partial summary judgment and its order denying Aurora's motion for reconsideration.

### Standard of Review

We review an order granting summary judgment de novo. *Aspen Wilderness Workshop, Inc. v. Colo. Water Conservation Bd.,* 901 P.2d 1251, 1256 (Colo.1995). Where there is no genuine issue of material fact in dispute, summary judgment is proper. *Abrahamsen v. Mountain States Tel. & Tel. Co.,* 177 Colo. 422, 426, 494 P.2d 1287, 1288 (1972). In the context of summary judg-

ment, a genuine issue of material fact is one which, if resolved, will affect the outcome of the case. *Mt. Emmons Min. Co. v. Town of Crested Butte,* 690 P.2d 231, 239 (Colo.1984). Where reasonable people would not reach different conclusions concerning the evidence, summary judgment is appropriate. *Jafay v. Bd. of County Comm'rs,* 848 P.2d 892, 903 (Colo.1993).

The burden of establishing an absence of a genuine issue of material fact falls on the moving party, but once this initial burden of production is met, the burden shifts to the opposing party to demonstrate that there exists a triable issue of fact. *Continental Air Lines, Inc. v. Keenan,* 731 P.2d 708, 713 (Colo.1987). This rule requires the opposing party to adequately demonstrate by relevant and specific facts that a real controversy exists. *Ginter v. Palmer & Co.,* 196 Colo. 203, 206, 585 P.2d 583, 585 (1978). A litigant cannot avoid a summary disposition of his case by merely asserting a fact without evidence to support it. *Norton v. Dartmouth Skis, Inc.,* 147 Colo. 436, 441, 364 P.2d 866, 868 (1961).

An order denying a motion for reconsideration is reviewed for abuse of discretion. *See* C.R.C.P. 60(b); *see also In re Marriage of Smith,* 928 P.2d 828, 830 (Colo. App.1996). Trial courts have broad discretion under C.R.C.P. 60(b) to vacate judgments whenever such action is appropriate to accomplish justice. *Id.* (citing *Canton Oil Corp. v. Dist. Court,* 731 P.2d 687 (Colo. 1987)).

### I. The "Can and Will" Requirement

A conditional water right is "a right to perfect a water right with a certain priority upon the completion with reasonable diligence of the appropriation upon which such water right is to be based." § 37–92–103(6), C.R.S. (2008). The purpose of a conditional water decree is to allow an appropriation of water to relate back to the time that the first step is taken to secure that appropriation. *Rocky Mountain Power Co. v. Colo. River Water Conservation Dist.,* 646 P.2d 383, 387 (Colo.1982). The utility of such a right is obvious. A prospective appropriator undertaking a large-scale development project may

not be able to put the water to beneficial use immediately. Therefore, before substantially investing in an ambitious project, the appropriator requires some assurance of appropriation priority in order to safeguard his investment. *See Taussig v. Moffat Tunnel Water & Dev. Co.*, 106 Colo. 384, 390–91, 106 P.2d 363, 366–67 (1940).

■ To obtain a conditional water right, an applicant must demonstrate that: (1) it has taken a "first step," which includes an intent to appropriate the water and an overt act manifesting such intent; (2) its intent is not based on a speculative sale or transfer of the water to be appropriated; and (3) there is a substantial probability that the applicant can and will complete the appropriation with diligence and within a reasonable time. *Pagosa Area Water & Sanitation Dist. v. Trout Unlimited*, 170 P.3d 307, 314 (Colo.2007). In this case, we are concerned with the last of these requirements, the "can and will" requirement, which is codified in statute:

> No claim for a conditional water right may be recognized or a decree therefor granted except to the extent that it is established that the waters can and will be diverted, stored, or otherwise captured, possessed, and controlled and will be beneficially used and that the project can and will be completed with diligence and within a reasonable time.

§ 37–92–305(9)(b), C.R.S.

■ We have explained that Colorado's can and will statute requires an applicant for conditional water rights to demonstrate a "substantial probability that within a reasonable time the facilities necessary to effect the appropriation can and will be completed with diligence." *Bd. of County Comm'rs v. United States*, 891 P.2d 952, 961 (Colo.1995). Nevertheless, we recognized that proof of substantial probability "necessarily involves 'imperfect predictions of future events and conditions.'" *City of Black Hawk v. City of Central*, 97 P.3d 951, 957 (Colo.2004) (quoting *Bd. of County Comm'rs*, 891 P.2d at 961). Accordingly, we have held that, while "the ownership of and an applicant's right of access to a reservoir site are appropriate elements to be considered in the determination of whether a storage project will be complet-

ed," *FWS Land & Cattle Co. v. State Div. of Wildlife*, 795 P.2d 837, 840 (Colo.1990), a party's "present and prospective ability to access water storage facilities" is a relevant, "but 'not necessarily determinative' element of the applicant's proof." *Black Hawk*, 97 P.3d at 957 (quoting *City of Thornton v. Bijou Irrigation Co.*, 926 P.2d 1, 43 (Colo. 1996)). To determine whether a party's lack of access to property underlying a proposed conditional water storage right is fatal to that party's ability to meet the can and will requirement, courts must necessarily engage in a balancing test and determine whether the applicant's "evidence of factors supporting the substantial probability of future completion is sufficient to outweigh the presence of future contingencies." *Bijou*, 926 P.2d at 45.

■ In our previous cases addressing the can and will requirement, we have distinguished between final and non-final denials of access to state or federal property in outlining the circumstances in which a lack of access may be a dispositive factor weighing against substantial probability of diligent future completion. *Black Hawk*, 97 P.3d at 957; *In re Vought*, 76 P.3d 906, 914 (Colo. 2003). A final denial of access is one that forecloses an applicant's only legal means of access to the property underlying the claimed conditional water right. *West Elk Ranch L.L.C. v. United States*, 65 P.3d 479, 482 (Colo.2002); *In re Gibbs*, 856 P.2d 798, 803 (Colo.1993).

In cases where a government denial of access is final, we have held that the can and will test cannot be met. *West Elk*, 65 P.3d at 482–83; *FWS*, 795 P.2d at 839–40. In *West Elk*, a ranch sought conditional water rights to a spring located on adjacent National Forest land. 65 P.3d at 480. The ranch had applied to the Forest Service for access to government lands, but its application had been denied. *Id.* We held that the Forest Service's denial of the ranch's request for access precluded the ranch from establishing a substantial probability that it could and would be able to diligently develop the conditionally granted water right. *Id.* at 482. Importantly, we noted that, although the ranch argued that it still might be able to obtain an access permit despite the Forest

Service's denials, the ranch had submitted "no evidence that the decision might be overturned" and thus had failed to "demonstrate a substantial probability it would obtain" the necessary permits. *Id.* at 482–83. Similarly, in *FWS* an applicant sought a conditional direct flow right and a conditional water storage right for two lakes located primarily on state-owned land. 795 P.2d at 838. In opposing FWS's application for the conditional storage right, the Colorado Division of Wildlife filed affidavits stating that FWS did not have permission to use the state lands underlying the reservoir to increase the effective storage capacity and would not receive such permission in the future. *Id.* at 839. Because FWS could neither obtain consent from the Division of Wildlife nor condemn access, it could not satisfy the can and will requirement. *Id.* at 840.

On the other hand, we have held that the applicant's present lack of access to the property underlying the claimed conditional water right is not necessarily fatal to its claim, provided that the applicant has otherwise demonstrated by a preponderance of the evidence that it has other means at its disposal to gain access and that these means yield a substantial probability that it will do so. *West Elk*, 65 P.3d at 482–83; *Gibbs*, 856 P.2d at 803; *see also Bijou*, 926 P.2d at 44 (holding that the applicant's "actions further support a determination that [it] can and will successfully resolve [the enumerated] contingencies prior to the projected completion date of the project"). In *Gibbs*, an applicant sought a conditional water right for the withdrawal and diversion of water from a well located on another owner's land over the opposition of that owner. 856 P.2d at 799–800. Although we acknowledged that the applicant was not required to establish finally her present right of access to the property, we upheld the water court's finding that the applicant had demonstrated her ability to access the property by means of a previously granted easement or by private condemnation. *Id.* at 803. Accordingly, we agreed with the water court that the applicant had met her burden to show by a preponderance of the evidence that there was a substantial probability that she could and would gain access to the property, and thus that she could and would develop the conditionally granted water right. *Id.*

*Black Hawk* represents another case in which we held that the applicant's present lack of access was not fatal to its claimed conditional water right under the can and will test. 97 P.3d at 958. In *Black Hawk*, the city of Black Hawk filed an application for a conditional water storage right in a reservoir. *Id.* at 953–54. Central City, an adjacent city which owned the land underlying the reservoir, objected. *Id.* Nine days before trial, Central's city council passed a resolution stating, "Central will not enter into agreements to allow third parties to use real estate interests to construct other water projects not filed for adjudication by Central." *Id.* at 954. Based on the evidence presented at trial, the water court in Black Hawk found that "Black Hawk adequately satisfied the access to property requirement of the can and will statute." *Id.* at 958. The sole issue relating to access before us in that case was whether, in view of Central's resolution, the trial court's finding was " 'so clearly erroneous as to find no support in the record.' " *Id.* (quoting *Gibbs*, 856 P.2d at 801). With that standard of review in mind, we held that Central's resolution was not a "final denial" based on the unique facts of that case. *Black Hawk*, 97 P.3d at 958. The resolution was nonbinding and later city councils were free to ignore it. *Id.* at 954. The resolution was also non-specific; it did not deny Black Hawk's request for access, but rather clarified Central's prospective position on all such applications. *Id.* at 958. Based on these facts, we held that the resolution did not create so great a contingency regarding Black Hawk's ability to access the property that it tipped the scales against the water court's finding of substantial probability, to which we were obliged, given the procedural posture of the case, to give deference. *Id.*

We emphasize that, while the final/non-final denial distinction is a helpful guidepost in determining whether the applicant has established a substantial probability of completion, the mere absence of a final denial does not entail the conclusion that the can and will test has been satisfied. *See, e.g., Natural Energy Res. Co. v. Upper Gunnison*

*River Water Conservancy Dist.*, 142 P.3d 1265, 1278–79 (Colo.2006) ("*Arapahoe III*") (holding that a final denial of government authorization is not a requisite to a finding that the can and will test is not satisfied if authorization is unlikely because it would require an act of Congress); *Bd. of County Comm'rs v. Crystal Creek Homeowners' Ass'n*, 14 P.3d 325, 344 (Colo.2000) ("*Arapahoe II* ") (holding that although the applicant had not yet applied for a federal permit to locate a pumping plant on land owned by the United States Bureau of Reclamation, and thus there had been no final denial, the applicant had failed to prove it met the can and will requirement because the proposed use of the existing reservoir would "disrupt decreed rights and require a major operational change of the reservoir"). In other words, absence of a final denial of access is a necessary, but not a sufficient, condition for satisfaction of the can and will requirement.[1] *Arapahoe III*, 142 P.3d at 1279 ("[O]ur ruling [in *Black Hawk*] should not be construed as holding that final denial of government authorization is requisite to denial of an application under the can and will statute."). Again, the key inquiry is whether "evidence of factors supporting the substantial probability of future completion is sufficient to outweigh the presence of future contingencies." *Bijou*, 926 P.2d at 45. While a final denial of access necessitates the finding that there is no substantial probability of access, the question of whether contingencies falling short of a final denial will be fatal to an applicant's ability to meet the can and will test is a question of fact and will depend greatly on the circumstances of each individual case.

## II. Rangeview's Lease

 The water court ruled that Rangeview's lease, because it precludes the Land Board from granting Aurora access to the disputed sites over Rangeview's objection, constitutes a final denial of Aurora's request for access. Aurora argues, as it did in the water court, that the lease gives the Land Board authority to grant Aurora access to the disputed sites without Rangeview's consent in two ways. First, Aurora argues that the Land Board may grant it an overlapping right-of-way because the lease does not grant Rangeview an exclusive right to occupy the disputed reservoir sites. Second, Aurora argues that the lease grants the Land Board the authority to unilaterally relocate Rangeview's rights-of-way for the benefit of Aurora. We disagree with both arguments.

 Contract interpretation is generally a question of law for the court. *Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310, 1313 (Colo.1984). Whether a contract is ambiguous is also a question of law for the court. *East Ridge of Fort Collins v. Larimer & Weld Irrigation Co.*, 109 P.3d 969, 974 (Colo.2005). "[A] mere disagreement between the parties as to the interpretation of an agreement does not in itself create an ambiguity as a matter of law." *Union Rural Elec. Ass'n, Inc. v. Public Utils. Comm'n*, 661 P.2d 247, 251 (Colo.1983).

As to Aurora's argument that the Land Board may allow it to share Rangeview's rights-of-way, we agree with Aurora that the lease grants Rangeview the right to obtain non-exclusive rights-of-way—Exhibit F to the lease repeatedly characterizes Rangeview's rights-of-way as such. The question we must address is whether the fact Rangeview's rights-of-way are non-exclusive means that the Land Board retains the right to grant an overlapping right to occupy the reservoir sites to another party.

---

1. Aurora argues that in order to meet the can and will requirement in the context of access to land underlying the claimed right, it need only show some possible means by which it can obtain access, no matter how unlikely it is that such means can or will be implemented in reality. From its briefing, it is apparent that Aurora derives this conclusion from its claim that a final denial is *required* before dismissing an application for a conditional water on can and will grounds. Our cases holding that a final denial of access is fatal to an applicant's claim for a condi-

tional water right neither entail, nor have we ever endorsed, such a conclusion. Aurora mistakes our holding that a final denial of access is a sufficient condition for denial of an application on can and will grounds for the proposition that a final denial of access is a necessary condition for a denial of an application on can and will grounds. That is, while we have said, for example, "if it is raining outside, then the streets are wet," this does not entail the proposition that "if the streets are wet, then it is raining."

We have previously explained that "where an easement is non-exclusive in nature, both the holder of the easement and the owner of the land burdened by the easement have rights to use the property." *Lazy Dog Ranch v. Telluray Ranch Corp.,* 965 P.2d 1229, 1238 (Colo.1998). However, the servient owner's rights to use the burdened land are circumscribed by the nature and extent of the easement-holder's rights. *Bijou Irrigation Dist. v. Empire Club,* 804 P.2d 175, 183 (Colo.1991). The owner of the servient estate, the Land Board in this case, retains only the right to use the non-exclusive easement for purposes that are consistent with the rights of the easement holder and that do not unreasonably interfere with the dominant estate. *Id.; Lazy Dog Ranch,* 965 P.2d at 1238.

In *Empire Club,* we held that the holder of a non-exclusive easement for water storage, and not the owner of the land underlying the reservoir, has the right to control the water in storage. 804 P.2d at 184. It was clear from our opinion in that case that "the right to control water in storage" includes, at the very least, the right to control the outlet of the dam. *Id.* at 184–85. Giving Aurora the benefit of all inferences that may be drawn from the facts, Aurora's proposal to share the reservoir would give it co-equal control of the outlet with Rangeview.[2] However, because the Land Board, as owner of the servient estate, no longer retains the right to open and close the outlet, it cannot grant that right to Aurora or any other third party. Thus, co-locating Aurora's rights-of-way with Rangeview's would unreasonably interfere with Rangeview's exclusive right to control the water in storage.

Rangeview could, of course, consent to enter into a joint-operation agreement with Aurora, in which the parties would necessarily share control of the reservoirs. However, the lease does not give the Land Board the right to impose unilaterally such a partnership on Rangeview, and the mere possibility of agreement between two adversaries does not constitute a substantial probability within the meaning of the can and will statute.

Further, we conclude that Aurora's argument that the Land Board may unilaterally relocate Rangeview's rights-of-way similarly fails. The lease provision granting the Land Board the ability to relocate Rangeview's rights-of-way contains important limiting language, preventing relocation by the Land Board in instances where such relocation is for the convenience of the neither Rangeview nor the Land Board, where relocation would materially adversely affect Rangeview, or where relocation is not made for the commercially reasonable development of the Lowry Range.

> [The master plan of rights-of-way] may be amended by Land Board for the convenience of the Parties, provided that any such amendment shall not materially adversely affect the rights and privileges of any Party. The total acres of rights-of-way shall not be reduced and the Land Board may relocate rights-of-way, whether planned or in use, for the commercially reasonable development of the Lowry Range.

We agree with the water court that Aurora's proposed relocation of one or more of Rangeview's rights-of-way would violate the terms of the lease under the circumstances of this case. First, the agreement provides that master plan of rights of way may be amended only for the convenience of "the Parties." The lease defines "the Parties" as Rangeview and the Land Board. The lease does not permit the Land Board to relocate Rangeview's rights-of-way for the benefit of Aurora. Second, relocation of one of Rangeview's reservoir rights-of-way would materially adversely affect Rangeview. Aurora's proposed relocation would require the Land Board to move an existing dam and reservoir. While relocation may be a practical option when dealing with a fence or a water line, it is not reasonable to conclude that there is a substantial probability that the

---

**2.** Aurora argues that whether an overlapping right-of-way will unreasonably interfere with Rangeview's rights is a question of fact and should not have been decided on summary judgment. Although the extent of control that Range-

view would have to cede to Aurora under Aurora's plan is disputed, it is undisputed that, at the very least, Rangeview would have to give up its presently exclusive control over fluctuations in the water level of the reservoir.

Land Board can and will move a dam. Finally, Aurora has introduced no evidence, at least none creating a genuine issue of material fact, that the construction of the East Reservoir for use in its Prairie Waters Project bears any substantive relationship to the commercially reasonable development of the Lowry Range, nor has Aurora asserted any such relationship in its argument before this court.[3]

However, we do not rest our conclusion that Aurora has failed to show that there is a substantial probability that the Land Board will unilaterally relocate Rangeview's rights-of-way on our construction of the lease alone. We need not speculate about what the Land Board may or may not legally do, for Land Board's order already states what it intends to do. The Land Board's order states that it cannot and will not grant Aurora access to the disputed sites unless and until it obtains Rangeview's consent. The order provides in pertinent part:

> In order to allow Aurora to build reservoirs [on the disputed sites] ... the Board and Rangeview will have to give up one or more of their decreed reservoir sites. Therefore, in order for the Board to allow Aurora to build reservoirs [on the disputed sites], it will need Rangeview's consent. Due to the Board's existing legal obligations to Rangeview ... the Board can-

not consent to Aurora's request to build reservoirs on the Lowry Range, as proposed in Case No. 03CW415, until Aurora can produce a Joint Agreement between the appropriate parties that reconciles each party's interests so there can be a holistic solution to the water, conservation and development issues affecting the Lowry Range and surrounding areas....

The Land Board's order states that the Land Board does not intend to unilaterally relocate Rangeview's rights-of-way. We decline to second-guess the Land Board's wisdom or judgment in administering state lands. Thus, the Land Board's order forecloses this proposed means of access to the disputed sites.[4] Not only is the record devoid of evidence of a substantial probability that the Land Board can and will unilaterally relocate Rangeview's rights-of-way, the record contains affirmative evidence, in the form of the Land Board's order, that the Land Board will take no action whatsoever without Rangeview's consent. Although Aurora insists that the relocation of Rangeview's rights-of-way remains a viable means of access to the disputed sites, there is no evidence to support this assertion. The argument of counsel, standing alone, does not create a genuine issue of material fact. *Dartmouth Skis,* 147 Colo. at 441, 364 P.2d at 868.

---

3. In connection with its motion for reconsideration, Aurora submitted two affidavits of Aurora's director of utilities. These affidavits attempt to raise the issue of Aurora's potential water service to the Lowry Range, thus supporting an argument that construction of the East Reservoir, and hence relocation of Rangeview's rights-of-way, is for the commercially reasonable development of the Lowry Range. Assuming without deciding that the water court was required to consider this new evidence on a motion for reconsideration, *but see Ogunwo v. Am. Nat. Ins. Co.,* 936 P.2d 606, 611 (Colo.App.1997) ("Affidavits filed after the granting of a motion for summary judgment cannot be considered in a motion to reconsider ...."), these affidavits create no genuine issue of material fact. The first of these affidavits merely raises the issue of Aurora's potential water service to four sections located outside the Lowry Range as defined by the lease. After Rangeview pointed this out, Aurora filed the second affidavit, in which the director of utilities states that Aurora and Lend Lease Communities LLC, the developer that the Land Board has selected to develop six sections of the Lowry

Range, have discussed the possibility of Aurora providing water service to two sections located within the Lowry Range, as defined by the lease. These discussions provide little, if any, link between construction of the East Reservoir and the commercially reasonable development of the Lowry Range. There are no substantive plans for Aurora to provide water to the developer or even any evidence that the developer prefers Aurora's water service. We note that this argument was not raised before this court and therefore does not impact our holding.

4. In connection with its motion for reconsideration, Aurora submitted the affidavit of the Land Board's director, which states in part that the Land Board's order "was not a final determination denying Aurora Water access...." Again, even if the water court were required to consider this evidence, the affidavit creates no genuine issue of material fact. Whether a denial of access is final is, of course, a legal determination. The Land Board's post hoc legal characterization of its order carries no weight and creates no genuine factual issue.

Giving Aurora the benefit of all inferences that may be drawn from the facts in the record, we conclude that both Rangeview's restated lease agreement and the Land Board's order together negate any inference of a substantial probability that the Land Board can or will unilaterally co-locate or relocate Rangeview's rights-of-way for the benefit of Aurora. Both the lease and the Land Board have placed Aurora's sole means of access to the disputed sites for the foreseeable future squarely in the hands of Rangeview. We agree with the water court that, absent Rangeview's consent, Aurora must wait and see if Rangeview fails to exercise its rights under the lease, if the lease terminates, or if the lease is not renewed when it expires in 2081. As we have repeatedly explained, the legislature rejected a wait and see approach to conditional water rights when it enacted the can and will statute. *See, e.g., West Elk,* 65 P.3d at 481 ("[T]he General Assembly eliminated a 'wait and see' approach to determining conditional water rights. Instead, it opted to require an applicant to show in the conditional decree proceedings that it 'can and will' complete the appropriation of water with diligence and within a reasonable time before a court may issue a conditional decree.").

### III. Negotiations Between Rangeview and Aurora

Aurora argues that even if there is not a substantial probability that the Land Board can and will relocate or co-locate Rangeview's rights-of-way, it has one other means of obtaining access to the disputed sites, apart from waiting to see if the lease terminates or is unenforced: it may negotiate a joint agreement to use the disputed sites with Rangeview.

We refuse to consider evidence concerning potential settlement between Aurora and Rangeview in ongoing and active litigation to support the inference of a substantial probability that Aurora can and will gain access by way of an agreement with Rangeview. A holding that permits one party's openness to settlement to be used as a weapon by that party's adversary in ongoing litigation over issues of access would be the death knell of settlement in conditional water cases. Few would be open to compromise if the very attempt at compromise would prejudice one's position. This is precisely the consideration behind CRE 408, our rule of evidence prohibiting the introduction of evidence of compromise and offers to compromise for purposes of proving a party's liability for, the invalidity of, or amount of a claim when these issues are disputed. *See, e.g.,* 2 Kenneth S. Broun et al., *McCormick on Evidence* § 266 (6th ed.2006). Colorado courts have long enunciated a strong policy favoring settlement. *See, e.g., Smith v. Zufelt,* 880 P.2d 1178, 1185 (Colo.1994) ("When considering alternative consequences, we will defer to results that encourage the settlement of disputes."); *see also In re Application for Water Rights of United States,* 101 P.3d 1072, 1089 (Colo. 2004) (Hobbs, J., dissenting) ("Settlement and accommodation of multiple interests can often promote both environmental and water user interests.").

Moreover, holding that the possibility of compromise between adversaries sufficiently demonstrates a substantial probability of access would render the can and will test a nullity. In every case, it is possible that an applicant's opponents will relent. However, the very fact that the parties are opponents in active and ongoing litigation turns the possibility of such compromise into pure conjecture. An applicant must rest its case on more than the bare possibility that its adversaries will disappear in order to satisfy the can and will test. Moreover, as explained, we decline to inquire into the specifics of ongoing settlement in order to find out how substantial or definite they really are.

### IV. The "Rigid Application Rule" and Maximum Utilization

Finally, Aurora argues that even if it cannot demonstrate by a preponderance of the evidence a substantial probability that it can and will gain access to the disputed sites, this court should nevertheless hold that the can and will test is satisfied. Aurora supports this argument by appealing to what it calls the "rigid application rule." This rule, as Aurora interprets it, requires courts to apply a less demanding, less exacting can

and will test where speculation is not an issue in an application for conditional water rights. *Bijou,* 926 P.2d at 43. In *Bijou,* we explained that "the 'can and will' requirement should not be applied rigidly to prevent beneficial uses where an applicant otherwise satisfies the legal standard of establishing a nonspeculative intent to appropriate for a beneficial use." *Id.* However, we further refined this rule in a footnote, in which we explained that an appeal to this rule might be helpful in overcoming technical obstacles to satisfaction of the can and will test, only where excusing such obstacles would further the policy of maximum utilization. *Id.* at n. 31.

> Where the evidence presented by the applicant establishes that speculation is not a real concern, the "can and will" statute, while still an important check as to the feasibility of the intended appropriation, should not be applied to prevent on technical grounds an appropriation that would serve the goal of maximum utilization.

*Id.* Both elements of this rule, (1) a technical obstacle to satisfaction of the can and will requirement (2) that impedes maximum utilization, are absent from this case.[5]

■ Lack of access to property underlying a claimed conditional water storage right is not a "technical ground"; it is a substantial impediment to the award of a conditional decree that can be overcome only if the applicant can show that, despite its present lack of access, there is a substantial probability that it can and will obtain such access in the future. If we were to hold that a lack of access is a mere technicality, we would, in effect, collapse the anti-speculation doctrine and the can and will requirement, and an applicant would be required to demonstrate little over and above the absence of a speculative intent. The can and will requirement is a separate and distinct element which must be established to obtain approval of a conditional water right. *Bijou,* 926 P.2d at 42 (while the can and will requirement is "aimed at eliminating speculation, it is not identical to the anti-speculation doctrine"). Establish-

ing a substantial probability of access is critical to satisfying the can and will requirement. *See FWS,* 795 P.2d at 840–41; *West Elk,* 65 P.3d at 482.

■ Moreover, the goal of maximum utilization is not frustrated by a denial of conditional storage rights for the disputed sites. Aurora obtained a decree for the full amount of the water it claimed and its appropriation will not be prevented. The decree provides for conditional storage rights in three of Aurora's proposed alternative sites for construction of the East Reservoir. Only the infeasible alternatives are eliminated.

■ For similar reasons, we conclude that section 37–87–101, C.R.S. (2008), does not compel a result different from the one we reach today. This statute provides that "[s]tate agencies shall to the maximum extent practicable, cooperate with persons desiring to acquire real property for water storage structures." § 37–87–101(1)(b). We emphasize the word "practicable." It is not "practicable" for the Land Board to disregard its legal obligations to Rangeview or expose itself to potential litigation. It is not "practicable" for the Land Board to move an existing dam and reservoir. It is not "practicable" for the courts of this state to inquire into the details of settlement negotiations in search of the faintest glimmer of compromise. In short, it is not "practicable" for the Land Board to grant Aurora access to the disputed sites.

## Conclusion

For the reasons stated, we affirm the water court's ruling. The case is remanded to that court for proceedings consistent with this opinion.

Justice EID does not participate.

---

5. Although Aurora has applied for conditional water storage rights at six sites for the construction of no more than two reservoirs, we assume, for the sake of argument, that speculation is not an issue here because, at least as before this court, this issue appears uncontested.