240 P.3d 542 (2010)
The PEOPLE of the State of Colorado, Petitioner-Appellee,
In the Interest of T.M. and J.M., Children, and
Concerning S.M., Respondent-Appellant.
No. 09CA2709.
Colorado Court of Appeals, Div. I.
June 10, 2010.
*543 H. Lawrence Hoyt, County Attorney, Toni Jo Gray, Assistant County Attorney, Boulder, Colorado, for Petitioner-Appellee.
Sharon M. Plettner, Guardian Ad Litem.
Meinster & Associates, P.C., Barry Meinster, Conifer, Colorado, for Respondent-Appellant.
Opinion by Judge TAUBMAN.
S.M. (father) appeals the trial court's summary judgment terminating the parent-child legal relationship between him and his children, T.M. and J.M. We affirm in part, reverse in part, and remand for further proceedings.

I. Background
At the time of the filing of the dependency and neglect petition in April 2009, T.M. was three years old and J.M. was eight years old. The children were adjudicated dependent and neglected as to their mother, in June 2009, and she confessed to the termination of her parental rights in January 2010. The trial court adjudicated T.M. and J.M. dependent and neglected as to father in August 2009.
The Boulder County Department of Housing and Human Services (the department) moved for summary judgment to terminate father's parental rights under section 19-3-604(1)(b)(III), C.R.S.2009, which provides:
(1) The court may order a termination of the parent-child legal relationship upon the finding by clear and convincing evidence...:
...

*544 (b) That the child is adjudicated dependent or neglected and the court finds that no appropriate treatment plan can be devised to address the unfitness of the parent or parents. In making such a determination, the court shall find one of the following as the basis for unfitness:
...
(III) Long-term confinement of the parent of such duration that the parent is not eligible for parole for at least six years after the date the child was adjudicated dependent or neglected or, in a county designated pursuant to section 19-1-123, if the child is under six years of age at the time a petition is filed in accordance with section 19-3-501(2), the long-term confinement of the parent of such duration that the parent is not eligible for parole for at least thirty-six months after the date the child was adjudicated dependent or neglected and the court has found by clear and convincing evidence that no appropriate treatment plan can be devised to address the unfitness of the parent or parents....
In support of its motion, the department asserted that it was undisputed that father was serving two consecutive twelve-year sentences in the Department of Corrections (DOC) and an additional concurrent sentence of six years related to a habitual offender count, with 771 days credit for time served. The department averred that the sentences were far in excess of the statutory criteria set forth in section 19-3-604(1)(b), and it attached certified copies of the sentencing order and the mittimus.
It further claimed, as pertinent here, that the case fell within the expedited permanency planning guidelines of section 19-3-703, C.R.S.2009, requiring that the children be placed in a permanent home within twelve months of their first outside placement (which occurred on April 23, 2009), that termination of father's parental rights would be in both children's best interests, and that no less drastic alternatives to termination existed.
The court granted summary judgment finding, based on clear and convincing evidence, that no appropriate treatment plan could be devised, that father was subject to long-term confinement of such duration that he would not be eligible for parole for at least thirty-six months after the children's adjudication date, that termination was in the children's best interests, and that there were no less drastic alternatives.

II. Genuine Issue of Material Fact
Father first contends that the trial court erred in granting summary judgment because a genuine issue of material fact existed regarding his parole eligibility date and the length of his actual confinement. We agree with father in part because the department did not present evidence of his parole eligibility date.

A. Summary Judgment
Summary judgment, although permissible in dependency and neglect proceedings, is a drastic remedy that is not warranted unless it is clearly shown that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); People in Interest of C.C.G., 873 P.2d 41, 43 (Colo.App.1994).
In assessing a summary judgment motion seeking to terminate parental rights, the trial court must determine not only that there are no genuine issues of material fact, but also that the moving party has established the applicable statutory criteria for termination by clear and convincing evidence. People in Interest of A.E., 914 P.2d 534, 539 (Colo.App.1996).
Once the moving party meets its burden of showing that no genuine issue of material fact exists, the burden shifts to the opposing party to establish that there is a genuine issue of fact. An opposing party cannot simply rely on allegations in pleadings or argument, but rather, must set forth specific facts by affidavit or otherwise showing that there is a genuine issue for trial. C.R.C.P. 56(e); People in Interest of A.C., 170 P.3d 844, 846 (Colo.App.2007).

B. T.M. (Younger Child)
In his response to the summary judgment motion, father disputed the description *545 of his present sentence and indicated that he intended to appeal the six-year sentence he received for being a habitual offender, which he claimed would bring him under the minimum thirty-six-month period of incarceration until parole eligibility. However, father's response was not verified, he provided no opposing affidavits or other support to contradict the sentencing order and mittimus, and the record before the trial court contained nothing to suggest that the department had incorrectly represented his sentence. See People in Interest of A. C., 170 P.3d at 846 (in ruling on a motion for summary judgment, a trial court must consider the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any).
Further, father's stated intention to appeal his habitual offender sentence did not prevent termination of his parental rights under section 19-3-604(1)(b)(III). See People in Interest of T.T., 845 P.2d 539, 541 (Colo.App. 1992) (term "convicted" as used in the statute means a judgment of conviction, not a final determination of conviction after appeal; thus mother's parental rights could be terminated prior to the determination of the appeal of her criminal convictions).
We conclude that the department met its burden as the moving party with respect to T.M. It is apparent from the length of father's sentences and the applicable statutes that he will be confined for at least thirty-six months after the date of adjudication. See § 17-22.5-303(6), C.R.S.2009 (parole eligibility may occur once a defendant serves the sentence imposed less any time authorized for good time and for earned time); § 17-22.5-403(1), C.R.S.2009 (providing generally that parole eligibility may occur after an inmate has served fifty percent of the sentence imposed less any earned time granted).
However, father did not satisfy the burden once it shifted to him. Not only did he fail to provide an opposing affidavit in support of his claim that the department incorrectly described his sentence, but he also did not dispute that his earliest parole eligibility would occur more than thirty-six months after the adjudication, even based on the sentence as he contends it was imposed. Under these circumstances, father raised no genuine issue of material fact, and termination of his parent-child relationship with T.M. by summary judgment was appropriate. See People in Interest of A. C., 170 P.3d at 846 (department met its burden of showing that no genuine issue of material fact existed where it provided treating physician's affidavit to support its allegations of abuse and neglect and mother offered only responses, rather than an opposing affidavit from either her or another doctor).

C. J.M. (Older Child)
We reach a different conclusion with respect to the summary judgment terminating father's parent-child relationship with J.M.
The department never specifically alleged or presented evidence that father would not become eligible for parole for at least six years after the date of the adjudication. The trial court also entered no findings regarding the six-year period statutorily required for older children, instead granting summary judgment based on the determination that father would not be eligible for parole for at least thirty-six months.
Although father's sentence will result in confinement exceeding thirty-six months, as discussed above, we cannot conclude that his confinement will exceed six years. Indeed, the DOC's estimated parole eligibility date for father, as shown in its Internet database, is October 17, 2013, which is less than six years after the August 2009 adjudication date. See https://exdoc.state.co.us/inmate_locator/search_form.php (last visited May 17, 2010).[1] Section 17-22.5-403(1) generally provides for an inmate's parole eligibility after the inmate has served fifty percent of the sentence less any earned time granted under section 17-22.5-405, C.R.S.2009. That statute limits earned time to ten days a month with an overall cap of thirty percent of the sentence. § 17-22.5-405(1) & (4), C.R.S.2009. *546 We are not persuaded by the department's argument that we may infer a period of incarceration meeting the requirements of section 19-3-604(1)(b)(III) simply from the fact that the same trial judge presided at both father's sentencing on his second criminal conviction and its motion for summary judgment.
Because the department did not meet its burden of showing that the duration of father's incarceration would satisfy the longer statutory period applicable to the older child, summary judgment to terminate the parent-child relationship between father and J.M. was inappropriate. Therefore, we reverse that part of the judgment and remand for further proceedings.

III. Expedited Proceeding
In a related contention, father argues that the trial court erred by applying to both children the 36-month incarceration period that expressly applies only to the termination of parental rights concerning the younger child, T.M. We agree. Accordingly, we reject the department's position that because this case is subject to the expedited procedure as a result of T.M.'s age, the trial court properly granted summary judgment as to both T.M. and J.M. in reliance on only the minimum incarceration period.
The expedited procedures were adopted to serve the special interests and needs of children under the age of six. See § 19-1-102(1.6), C.R.S.2009 (recognizing that studies have disclosed that children undergo a critical bonding and attachment process prior to age six and that if bonding does not occur within that critical stage, the child will suffer significant emotional damage). Section 19-1-123(1), C.R.S.2009, provides that a designated county should implement the expedited procedures for the permanent placement of children for each new case filed involving a child under the age of six when the dependency and neglect petition is filed. Section 19-3-104, C.R.S.2009, further provides that any dependency and neglect hearing conducted under the expedited procedures because it involves a child under the age of six, shall, if appropriate, include all children residing in the same household.
As the department points out, by authorizing the treatment of older children under the same expedited procedures that apply to young children, the statutory scheme promotes both judicial efficiency and the preference for placing sibling groups together. See §§ 19-3-403(3.6)(b), 19-3-605(2), C.R.S.2009 (directing the trial court to presume that joint placement of a sibling group is in the best interests of the child or children). However, although the expedited procedures are to be applied to each new case involving a child under age six, as the department notes, the statutory scheme clearly places discretion in the trial court to apply the expedited procedures to older children only when such treatment is "appropriate."
Not only is the application of the expedited procedures to J.M. not mandated in this case, but we conclude that the policies underlying both the expedited procedures and the sibling group preference do not permit the application of the shorter incarceration period under section 19-3-604(1)(b)(III) so as to terminate parental rights concerning an older child who is subject to the longer incarceration period. To do so would extend the application of this statute to permit termination of parental rights without the adoption of a treatment plan to circumstances not intended by the General Assembly.
Termination of parental rights is a decision of paramount gravity affecting a parent's fundamental interest in the care, control, and management of his or her child, and the trial court must strictly comply with the appropriate standards for termination of a parent-child relationship. Because of the fundamental nature of parental rights, incarceration alone may not serve as a basis for the termination of parental rights. In Interest of K.D., 139 P.3d 695, 700 (Colo.2006). As a division of this court has previously recognized, section 19-3-604(1)(b)(III) represents a carefully crafted measure to balance fundamental parental rights against the state's compelling interest in protecting the welfare of its children in a manner that complies with substantive due process. See People in Interest of E.I.C., 958 P.2d 511, 513-14 (Colo. App.1998).
*547 Additionally, in adhering to the traditional rules of statutory construction, we discern nothing within the plain language of section 19-3-604(1)(b)(III) or the other pertinent statutes that would permit us to disregard the statutory classes related to incarceration as a basis for termination without the establishment of a treatment plan. See People in Interest of K.A., 155 P.3d 558, 561 (Colo.App. 2006) (in construing a statute, the court must first consider its plain language, reading it as a whole and declining to adopt an interpretation that either renders words or phrases superfluous or finds an exception not suggested by the wording).
Accordingly, the trial court could not properly apply the thirty-six-month period of confinement when determining whether to grant summary judgment to terminate father's parent-child relationship with J.M. On remand, the trial court must conduct an evidentiary hearing to determine father's parole eligibility date and whether the criteria for terminating his rights with respect to J.M. can be shown by clear and convincing proof. In the alternative, the department may seek to establish a court-approved treatment plan for father, and, if a subsequent motion to terminate his parental rights is filed, the court may consider his incarceration as a factor. See People in Interest of K.D., 139 P.3d at 701 (requirement that a court consider section 19-3-604(1)(b)(III) in determining parental fitness under section 19-3-604(2), C.R.S.2009, does not preclude the court from considering periods of incarceration not specified therein in determining fitness).
The judgment is affirmed as to T.M. and reversed as to J.M., and the case is remanded as directed.
Judge J. JONES and Judge RICHMAN concur.
NOTES
[1] We take judicial notice, under CRE 201, that this information is contained in the DOC's inmate locator database. See People v. Stanley, 170 P.3d 782, 793-94 (Colo.App.2007) (court may take judicial notice of administrative agency's public records).