24CA1485 Peo in Interest of JMS 03-27-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1485
Mesa County District Court No. 24JV18
Honorable Valerie J. Robison, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of J.M.S., J.N.S., and A.S., Children,

and Concerning B.S.,

Appellant.

---

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE LUM
Román, C.J., and Fox, J., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 27, 2025

---

Todd M. Starr, County Attorney, Brad Junge, Assistant County Attorney, Grand Junction, Colorado, for Appellee

Robert G. Tweedell, Guardian Ad Litem, for J.M.S. and J.N.S.

Josie L. Burt, Counsel for Youth, Glenwood Springs, Colorado, for A.S.

The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for Appellant

¶ 1    B.S. (father) appeals the summary judgment adjudicating J.M.S. and J.N.S. (the children) dependent and neglected. We affirm the summary judgment and remand for further proceedings consistent with this opinion.

## I.    Background

¶ 2    In February 2024, law enforcement in Mesa County obtained emergency protective custody of the children after their mother was arrested. The Mesa County Department of Human Services (Department) then filed a petition in dependency and neglect alleging that it had received reports that, among other things, mother was using illicit substances, the children were not attending school, and one of the children had physically fought with mother and run away from home. The petition also alleged that father was incarcerated for life.

¶ 3    Father denied the allegations in the petition and asked for a jury trial. The children remained in out-of-home placement for the remainder of the proceedings at issue here.

¶ 4    Before trial, the Department moved for an adjudication by summary judgment, arguing that the children were dependent and neglected under section 19-3-102(1)(b) and (e), C.R.S. 2024. The

Department asserted that undisputed facts established that (1) father had been convicted of multiple counts of sexual assault on a child in Mesa County Case No. 21CR281; (2) as a result of his convictions, father was incarcerated serving a life sentence; (3) his estimated parole date was in July 2165; and (4) father was restricted from having contact with any children, including his own, under the age of eighteen. To establish these facts, the Department submitted copies of two protection orders and the mittimus from Case No. 21CR281, as well as a screenshot from the Colorado Department of Corrections offender search website. The Department also submitted an affidavit from a caseworker in which the caseworker opined that the children would lack proper parental care due to the protection orders and father's incarceration. The Department argued that, as a result of the undisputed facts, the children should be adjudicated dependent and neglected as to father under section 19-3-102(1)(b) and (e).

¶ 5    In response, father asserted that the motion was based solely on his incarceration and that it was largely based on inadmissible hearsay. Father did not file any affidavits or other evidence to support his response.

¶ 6     After considering the parties' pleadings and arguments, the court granted the Department's motion, vacated the jury trial, and adjudicated the children dependent and neglected under section 19-3-102(1)(e).

## II.     Summary Judgment

¶ 7     Father contends that the juvenile court erred by granting summary judgment, alleging that the supporting evidence provided by the Department was inadmissible and that genuine issues of material fact remained.

### A.     Adjudication Criteria and Standard of Review

¶ 8     A child is dependent and neglected, as is pertinent to this case, if the child "lacks proper parental care through the actions or omissions of the parent," § 19-3-102(1)(b), or is "homeless, without proper care, or not domiciled with his or her parent . . . through no fault of such parent," § 19-3-102(1)(e).

¶ 9     Although the issue of whether a child is dependent and neglected presents a mixed question of fact and law (because it requires application of evidentiary facts to the statutory grounds), *People in Interest of S.N. v. S.N.*, 2014 CO 64, ¶ 21, we review the

juvenile court's grant of summary judgment de novo, *Robinson v. Legro*, 2014 CO 40, ¶ 10.

### B.    Summary Judgment Principles and Relevant Law

¶ 10    Summary judgment is a drastic remedy that is only appropriate when the moving party establishes that there is no genuine issue as to any material fact and it is entitled to judgment as a matter of law. *S.N.*, ¶¶ 14-15; *see also* C.R.C.P. 56(c). To show that there is no genuine issue of material fact, such facts must be undisputed. *S.N.*, ¶ 21. A material fact is one that affects the outcome of the case. *Morley v. United Servs. Auto. Ass'n*, 2019 COA 169, ¶ 14.

¶ 11    The moving party may use pleadings, depositions, answers to interrogatories, admissions on file, and affidavits to meet this burden. C.R.C.P. 56(c). An affidavit supporting a motion for summary judgment must be made on personal knowledge, set forth admissible facts, and affirmatively establish that the affiant is competent to testify to the matters in the affidavit. C.R.C.P. 56(e). The affidavit must contain evidentiary material, which, if the affiant were in court, would be admissible as part of the testimony. *People*

4

*v. Hernandez & Assocs., Inc.*, 736 P.2d 1238, 1240 (Colo. App. 1986).

¶ 12     If the moving party does not meet its burden, summary judgment must be denied. *People in Interest of M.M.*, 2017 COA 144, ¶ 13; *see also USA Leasing, Inc. v. Montelongo*, 25 P.3d 1277, 1279 (Colo. App. 2001) (where the plaintiff did not meet its summary judgment burden, the "defendant was not required to submit opposing evidentiary materials"). However, if the moving party meets that burden, the burden then shifts to the nonmoving party to "adequately demonstrate by relevant and specific facts that a real controversy exists." *City of Aurora v. ACJ P'Ship*, 209 P.3d 1076, 1082 (Colo. 2009).

¶ 13     We apply the same standard as the juvenile court in our review. *City of Fort Collins v. Colo. Oil & Gas Ass'n*, 2016 CO 28, ¶ 9. We must determine whether a genuine issue of material fact existed and whether the court correctly applied the law. *Id.*

¶ 14     We view the facts in the light most favorable to the nonmoving party and resolve all doubt against the moving party. *Weisbart v. Agri Tech, Inc.*, 22 P.3d 954, 956 (Colo. App. 2001).

C.    Analysis

1.    Hearsay

¶ 15    Father contends the Department did not meet its initial burden because the restraining orders, mittimus, screenshot, and caseworker affidavit were inadmissible, largely as hearsay.

¶ 16    Hearsay is "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  CRE 801(c).  Hearsay is not admissible unless otherwise allowed by statute or rule.  CRE 802.

a.    Restraining Orders, Mittimus, and Screenshot of Offender Search Results

¶ 17    Father asserts the restraining orders, mittimus, and screenshot of offender search results were inadmissible hearsay that did not fall under any exception.  But even if that were true, the court could nevertheless take judicial notice of the restraining orders and mittimus, as well as the information contained in the prisoner locator database, under to CRE 201.  *See Harriman v. Cabela's Inc.*, 2016 COA 43, ¶ 64 (noting that a court may take judicial notice of the contents of court records in a related proceeding); *People in Interest of T.M.*, 240 P.3d 542, 545 n.1 (Colo.

App. 2010) (taking judicial notice of a parent's estimated parole eligibility date "contained in the [prison system's] inmate locator database"). The Department therefore met its burden to demonstrate that father was incarcerated, wouldn't be eligible for parole until long after the children turned eighteen, and was prohibited from having any contact with children under the age of eighteen. Because father didn't set forth any evidence that called these facts into question, the court didn't err to the extent it treated them as undisputed.

### b.    Caseworker Affidavit

¶ 18    However, we agree with father that the caseworker's affidavit is inadmissible for two reasons.

¶ 19    First, the caseworker's opinion in the affidavit that the children would lack proper care is inadmissible. The Department didn't disclose the caseworker as an expert, and the caseworker's affidavit didn't describe her qualifications such that a court could have qualified her as an expert. *See K.H.R. v. R.L.S.*, 807 P.2d 1201, 1203 (Colo. App. 1990) (to satisfy the requirements of C.R.C.P. 56(e), the expert's affidavit must describe the affiant's qualifications as an expert). Without her qualifications, the

caseworker could not have testified as to her opinion that father's absence would cause the children to lack proper parental care.

¶ 20    Secondly, the remainder of the caseworker's affidavit does not affirmatively show that the caseworker had any personal knowledge of the relevant facts contained in the affidavit.  Affidavits in support of a summary judgment motion "shall be made on personal knowledge."  C.R.C.P. 56(e).  The affidavit only detailed that (1) the caseworker spoke to mother and received personal information that *mother* had and (2) the caseworker "reviewed" the mittimus and protection order from Case No. 21CR281.  Thus, the remainder of the affidavit was also inadmissible.

2.    Genuine Issues of Material Fact

¶ 21    Even without the caseworker's affidavit, however, we conclude that the undisputed facts give rise to only one reasonable inference: that the children lacked proper parental care.  *S.N.*, ¶ 18 (noting that summary judgment is appropriate where "reasonable minds could draw but one inference" from the undisputed facts (quoting *Gibbons v. Ludlow*, 2013 CO 49, ¶¶ 13, 35)).  As the juvenile court noted, at the time of the children's adjudication as to father, the children were not receiving parental care from mother because they

had been removed from her care by law enforcement and remained in out-of-home placement. And father could not provide proper parental care because, even if he were not incarcerated, he was restricted from having contact with any children under the age of eighteen.[1] *Cf. People in Interest of S.B.*, 742 P.2d 935, 938-39 (Colo. App. 1987) (affirming summary judgment adjudication where the child lacked proper parental care and was not domiciled with a parent because father was incarcerated for murdering mother). Accordingly, we conclude that the juvenile court did not err by granting the Department's summary judgment motion.

## III. ICWA

¶ 22    Father also asserts that the juvenile court did not comply with the Indian Child Welfare Act (ICWA) of 1978, 25 U.S.C. §§ 1901-1963, because it (1) failed to make findings as to whether it had a

---

[1] Father makes a single-sentence assertion that the district court improperly based its adjudication solely on his incarceration. *See People in Interest of D.M.F.D.*, 2021 COA 95, ¶ 24 (a parent's criminal convictions could not support a determination that the child was dependent or neglected absent a link between the conviction and the factors in section 19-3-102, C.R.S. 2024). Father's argument is undeveloped, but we nevertheless note that the juvenile court based its decision not only on father's incarceration but also on his inability to have contact with the children due to the protection order.

reason to know the children were eligible for membership with an Indian tribe; and (2) failed to order the Department to exercise due diligence, as father had claimed affiliation with a specific federally recognized tribe. Because we agree that the court did not make adequate findings prior to or at the dispositional hearing, we remand the case for compliance with ICWA. *See People in Interest of M.V.*, 2018 COA 163, ¶¶ 46-47, *overruled on other grounds by People in Interest of E.A.M. v. D.R.M.*, 2022 CO 42.

### A. Law and Standard of Review

¶ 23 In dependency and neglect proceedings, ICWA applies to cases involving Indian children. *See People in Interest of K.C. v. K.C.*, 2021 CO 33, ¶ 24; *see also* 25 U.S.C. § 1903(4) (defining "Indian child" as "any unmarried person who is under age eighteen" and who either (1) is "a member of an Indian tribe" or (2) "is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe"). To ascertain whether the case involves an Indian child, a juvenile court must inquire of the parties whether they know or have reason to know that the child is an Indian child. § 19-1-126(1)(a)(I)(A), C.R.S. 2024.

## B.    Analysis

¶ 24    The record shows that the juvenile court made ICWA inquiries and the Department made repeated attempts to gather information about whether the children had Native heritage.

¶ 25    Father asserted potential Kiowa tribal affiliation.  But he never provided further information, even upon request, about his potential Native heritage.  However, at a minimum, the court had information that "the child[ren] may have [Native] heritage," and therefore it was required to "direct the petitioning or filing party to exercise due diligence in gathering additional information that would assist the court in determining whether there is reason to know that the child[ren] [are] Indian child[ren]." § 19-1-126(3); *see also H.J.B. v. People in Interest of A-J.A.B.*, 2023 CO 48, ¶ 5.

¶ 26    Nothing indicates that the court ever directed the Department to exercise due diligence.  Nor did the court make a finding about whether it had reason to know that the children were Indian children.  *See H.J.B.*, ¶ 59 (concluding that, if section 19-1-126(3) applies, "the juvenile court must determine (1) whether the petitioning party satisfied its statutory due diligence requirements

11

and (2) whether the court now has reason to know that the child is an Indian child").

¶ 27 We must therefore remand the case to the juvenile court to comply with the provisions of ICWA. *See M.V.*, ¶¶ 90-91. On remand, the court must inquire of father whether he knows or has reason to know that the children are Indian children. *See* § 19-1-126(1)(a)(I)(A). If father still asserts that the children have Kiowa heritage but are not members or eligible for membership in a tribe, the court should direct the Department to exercise due diligence under section 19-1-126(3). However, if after making the proper inquiries the court has reason to know that the children are Indian children, it must direct the Department to send notices to the applicable tribes and treat the children as Indian children unless and until it determines that the children do not meet the definition of Indian children. *See* § 19-1-126(1)(b), (2). Once the court resolves these questions, it must make factual findings regarding whether ICWA applies.

## IV. Disposition

¶ 28 The judgment is affirmed, and the case is remanded for further proceedings consistent with this opinion.

CHIEF JUDGE ROMÁN and JUDGE FOX concur.